LAWRENCE J. MERLY, ADMINISTRATOR (ESTATE OF
ALBERTO OCASIO) *v.* STATE OF CONNECTICUT
(13527)

SHEA, GLASS, COVELLO, HULL and F. HENNESSY, Js.

200

Argued March 9—decision released May 16, 1989

*Judy Ann Stevens,* for the appellant (plaintiff).

*Carolyn K. Querijero,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* acting attorney general, and *Joseph I. Lieberman,* former attorney general, for the appellee (state).

SHEA, J. In this wrongful death action against the state of Connecticut the principal issue is whether a special act enacted in 1984, Spec. Acts 1984, No. 21, § 1,[1] which excused the failure of the estate to present its claim to the claims commissioner within one year

---

[1] Special Acts 1984, No. 21 provides: "AN ACT VALIDATING THE FILING OF THE NOTICE OF THE CLAIM OF THE ESTATE OF ALBERTO OCASIO WITH THE CLAIMS COMMISSIONER . . . . Section 1. The claim of the estate of Alberto Ocasio, filed against the state of Connecticut with the claims commissioner, otherwise valid except that proper notice of said claim was not filed with the clerk of the office of the claims commissioner as required by section 4-147 of the general statutes and within the time specified by section 4-148 of the general statutes, is validated and declared sufficient to permit the estate of Alberto Ocasio to maintain and prosecute its claim against the state notwithstanding the lack of proper notice. The state shall be barred from setting up the failure to comply with the provisions of sections 4-147 and 4-148 of the general statutes with respect to the claim and shall also be barred from denying that notice of the claim was properly and timely given pursuant to sections 4-147 and 4-148 of the general statutes."

after it had accrued, as required by General Statutes § 4-148 (a),[2] violates the prohibition in article first, § 1[3] of our state constitution against any person being "entitled to exclusive public emoluments or privileges from the community." The trial court found such a violation and rendered summary judgment for the state. The plaintiff, Lawrence J. Merly, as administrator of the estate of Alberto Ocasio, has appealed and claims that the court erred in granting the state's motion for summary judgment because: (1) the alternative provision of § 4-148 (a), allowing claims for injury to be presented within one year after "the date when the damage or injury is discovered," but no later "than three years from the date of the act or event complained of," was applicable; (2) there were genuine issues of material fact concerning the cause of the delay in presenting the claim that could be resolved only by a trial; (3) the rejection by the legislature of the recommendation of the commissioner to deny the plaintiff's claim implicitly accomplished the same purpose as the special act in allowing the claim to be pursued; (4) the action of the commissioner in granting permission to sue after passage of the special act is not reviewable by the court; and (5) the special act does not violate our state constitutional prohibition against "exclusive public emoluments or privileges" in view of circumstances allegedly indicating a public purpose for the act. We find no error.

---

[2] '[General Statutes] Sec. 4-148. LIMITATION ON PRESENTATION OF CLAIM. (a) No claim shall be presented under this chapter but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of."

[3] Article first, § 1 of our state constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

On July 30, 1979, at about 5:40 a.m., Alberto Ocasio was found dead after he had hanged himself by using his pajama bottom in a men's room at the Fairfield Hills Hospital, a psychiatric hospital operated by the state. An autopsy was performed that day and a death certificate was prepared, which was filed the next day, stating the cause of death to have been "asphyxia by hanging . . . suicide."

The decedent had been admitted to the hospital as a patient on a physician's emergency certification on July 24, 1979, six days before his death. This admission had resulted from his attempt to commit suicide on that date at the Bridgeport police headquarters after he had been arrested for a disturbance. The decedent had also been treated at the hospital after having attempted suicide about one month before his death.

The decedent's family made no attempt to pursue any claim against the state with regard to his death until late January, 1981, when they sent a letter requesting a copy of the autopsy report to the office of the chief medical examiner. On April 16, 1981, a written claim requesting permission to sue the state for wrongful death was filed with the claims commissioner by the plaintiff administrator. The commissioner dismissed the claim on July 15, 1983, denying permission to sue because the claim had not been filed within the time allowed by § 4-148 (a).

Pursuant to General Statutes § 4-158 (a), the claims commissioner reported to the General Assembly at its February 1984 session his action denying the plaintiff's claim and sought approval thereof. Instead, the General Assembly voted to reject the commissioner's recommendation. Substitute House Joint Resolution 21. Thereafter, Special Acts 1984, No. 21, § 1 was enacted, which authorized the estate to "prosecute its claim against the state notwithstanding the lack of proper

notice." The act also barred the state "from setting up the failure to comply with the provisions of sections 4-147 and 4-148 of the general statutes with respect to the claim" and "from denying that notice of the claim was properly and timely given pursuant to [those statutes]."

The plaintiff once again sought permission to sue the state from the claims commissioner.[4] The state moved to dismiss this request, maintaining that the special act was unconstitutional. The commissioner rejected the state's motion upon the ground that he lacked jurisdiction to decide such a constitutional issue. He authorized the plaintiff to institute suit on the claim against the state pursuant to General Statutes § 4-160 (a).[5]

The plaintiff commenced this action on October 10, 1986, more than seven years after the date of the decedent's death, claiming that the suicide resulted from the negligence of the Fairfield Hills Hospital in failing to protect against the likelihood of such an event in view of the decedent's mental condition and his previous suicide attempts, of which state hospital personnel should have been aware.

[4] Claims commissioner John E. Fay had dismissed the claim of the estate on July 15, 1983, after it had first been presented on April 16, 1981. James P. McLoughlin was serving as claims commissioner when, after another hearing, permission to sue the state was granted on September 18, 1986.

[5] "[General Statutes] Sec. 4-160. AUTHORIZATION OF ACTIONS AGAINST THE STATE. (a) When the claims commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable. In each such action the claimant shall allege such authorization and the date on which it was granted. The state waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of. The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances."

## I

The plaintiff claims that summary judgment should not have been granted because there remain genuine issues of fact as to whether the claim for wrongful death had accrued within one year before it was presented to the commissioner on April 16, 1981. Section 4-148 (a) provides that such claims "shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered . . . . " The plaintiff does not dispute that the injury was "sustained" on July 30, 1979, when the decedent's death occurred. He contends, nevertheless, that the statute contains three alternatives, any of which may be selected as the date when a claim "accrues": (1) the date the legal injury was sustained; (2) the date the legal injury was discovered; or (3) the date when in the exercise of reasonable care the legal injury should have been discovered. Relying on the second alternative, the plaintiff maintains that the decedent's family did not actually discover that the decedent's death had been caused by any wrongful act until after February, 1981, when they received a response to their inquiry regarding the autopsy report. Thus, he argues that his claim filed with the commissioner on April 16, 1981, was presented within one year after actual discovery of the injury, as allowed by § 4-148 (a), and that the contrary finding of the commissioner, which the legislature disapproved, was incorrect.

The state maintains that it is unnecessary to decide whether the claims commissioner erred in concluding initially that the wrongful death claim had not been presented within the time allowed by § 4-148 (a). The only issue, according to the state, is the constitutionality of the special act validating the notice of claim that had been filed and authorizing the estate to prosecute its

claim against the state despite its untimeliness. The portion of the special act referring to the claim as "otherwise valid except that proper notice of said claim was not filed with the clerk of the office of the claims commissioner . . . within the time specified by section 4-148 of the general statutes" indicates that the legislature has effectively ratified the finding of the commissioner that the plaintiff had failed to comply with the time limit of § 4-148 (a). The terms of the act indicate an intention to allow the plaintiff to proceed with his claim despite the untimeliness of its presentation to the commissioner.

Because the principal issue presented in this case is whether the special act on which the plaintiff relies should be declared invalid as an exclusive emolument or privilege, however, we must explore whether there is any conceivable justification for this challenged legislation from the public viewpoint. *Hillier* v. *East Hartford,* 167 Conn. 100, 107–109, 355 A.2d 1 (1974); *Tough* v. *Ives,* 162 Conn. 274, 294, 294 A.2d 67 (1972); *Sanger* v. *Bridgeport,* 124 Conn. 183, 189, 198 A. 746 (1938). If the initial determination of the commissioner concerning noncompliance with § 4-148 (a) was mistaken, even though the legislature apparently reached the same conclusion, it could not be said that the plaintiff had been given any special privilege in being allowed to pursue a claim that had in fact been presented within the time allowed. Accordingly, we must address the issues the plaintiff has raised concerning the applicability of § 4-148 (a) as a bar to his claim.

This court has construed the word "injury" in General Statutes § 52-584,[6] which establishes the date for

---

[6] "[General Statutes] Sec. 52-584. LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanitorium, shall be brought but within

commencement of the period allowed for bringing a malpractice action as "two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered," to refer to some form of actionable harm. *Catz* v. *Rubenstein,* 201 Conn. 39, 45, 513 A.2d 98 (1986). " 'Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action." *Lambert* v. *Stovell,* 205 Conn. 1, 6, 529 A.2d 710 (1987). The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. *Burns* v. *Hartford Hospital,* 192 Conn. 451, 460, 472 A.2d 1257 (1984). Applying this construction of the word "injury" to the same term as used in the similar provisions of § 4-148 (a), we agree with the plaintiff that his claim was not necessarily barred by the lapse of one year from July 30, 1979, when the decedent's death occurred.

We have not previously considered the interpretation advanced by the plaintiff that the phrase in § 4-148 (a), "sustained or discovered or in the exercise of reasonable care should have been discovered," permits a claim to be presented within one year of the actual discovery of actionable harm, even though such harm would have been discovered earlier if reasonable care had been exercised. Implicitly, however, we rejected such a construction of the similar phrase in § 52-584, "first sustained or discovered or in the exercise of reasonable care should have been discovered," when we approved the granting of summary judgment for the defendant in *Lambert* v. *Stovell,* supra, 7. There

two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

we concluded that the plaintiff "was aware of circumstances indicating that he had suffered a form of 'actionable harm' and should have discovered his injury at that time." Id. To hold that a claimant has an option to present his claim within one year from the actual discovery of actionable harm rather than from the time when such harm "in the exercise of reasonable care should have been discovered" would render the latter phrase superfluous and wholly ineffective in requiring reasonable diligence on the part of claimants.

## II

The plaintiff also contends that there were genuine issues of fact such as to preclude summary judgment with respect to whether the "actionable harm" suffered should have been discovered any earlier than one year before the presentation of the claim on April 16, 1981. He points to the fact that the autopsy report was not signed by the acting chief medical examiner, who had performed the autopsy, until June 17, 1980, and that requests made of the examiner's office by medical personnel at Fairfield Hills Hospital for the return of medical records and for copies of the autopsy report were not complied with fully until some time in June, 1980. He does not explain, however, how these delays on the part of state employees induced the decedent's family to wait until late January, 1981, almost one and one-half years after the death, before initiating their investigation. It is not claimed that the state officials who requested information concerning the suicide were in any way connected with the family. Furthermore, since the publicly recorded death certificate specified the cause of death to have been asphyxia by hanging under circumstances indicating suicide, any delay in the preparation of the autopsy report could not have impeded the discovery of actionable harm to the dece-

dent. The report merely confirmed the conclusions of the medical examiner as to the cause of death that had been set forth in the death certificate.

The plaintiff contends that knowledge of the decedent's suicide, as stated in the death certificate, would not alone have indicated malpractice and that an examination of the medical records indicating awareness of the decedent's previous suicide attempts on the part of hospital personnel was necessary before the family could possibly have learned the basis for a malpractice claim. He argues that a review of all the medical records as well as the autopsy report was necessary before any qualified expert opinion as to the existence of malpractice could have been obtained. In *Lambert* v. *Stovell,* supra, 6, we rejected a similar argument that the malpractice statute of limitations should not begin to run until the plaintiff "discovered *all* the information the defendant was allegedly obliged to disclose to him." (Emphasis in original.)

In the present case, we conclude that the undisputed fact that the family, until one and one-half years after learning of the decedent's suicide, did not start any investigation into the circumstances under which it had occurred constituted as a matter of law a failure to exercise reasonable care to discover the accrual of the wrongful death claim. The plaintiff has advanced no circumstances to justify such an inordinate delay.

## III

The plaintiff argues that, regardless of the validity of the special act, the rejection[7] by the legislature of

[7] The commissioner submitted House Joint Resolution No. 21 to the February 1984 session of the General Assembly, providing as follows: "RESOLUTION ACCEPTING THE RECOMMENDATION OF THE COMMISSIONER OF CLAIMS WITH REGARD TO THE CLAIM OF THE ESTATE OF ALBERTO OCASIO.

"Resolved by this Assembly:

"That the recommendation of the commissioner of claims, file number 6323 of said commissioner, that no award be granted to the estate of Alberto

the commissioner's recommendation that no award be granted to the estate of the decedent on its claim was in itself a sufficient basis, apart from the special act, to allow the commissioner to reconsider and then to grant his request for permission to sue the state. We conclude that the rejection of the recommendation that no award be made did not authorize further consideration by the commissioner of the request for permission to sue and that the special act was essential for that purpose.

The claims commissioner is authorized to "approve immediate payment of just claims not exceeding seven thousand five hundred dollars." General Statutes § 4-158 (a).[8] The commissioner, however, "shall make his recommendations to the general assembly for payment or rejection of amounts exceeding seven thousand five hundred dollars. . . . The general assembly may

Ocasio on its claim against the state in excess of five thousand dollars, is accepted."

This resolution was rejected by the adoption of Substitute House Joint Resolution No. 21, providing as follows:

"RESOLUTION REJECTING THE RECOMMENDATION OF THE COMMISSIONER OF CLAIMS WITH REGARD TO THE CLAIM OF THE ESTATE OF ALBERTO OCASIO.

"Resolved by this Assembly:

"That the recommendation of the commissioner of claims, file number 6323 of said commissioner, that no award be granted to the estate of Alberto Ocasio on its claim against the state in excess of five thousand dollars, is rejected."

[8] "[General Statutes] Sec. 4-158. JURISDICTION OF COMMISSIONER. PAYMENT OF CLAIM. REPORT TO ASSEMBLY. WAIVER OF PAYMENT ON PROTEST TO ASSEMBLY. (a) The claims commissioner may approve immediate payment of just claims not exceeding seven thousand five hundred dollars. The clerk of the office of the claims commissioner shall deliver to the comptroller a certified copy of the claims commissioner's order and the comptroller shall make payment from such appropriation as the general assembly may have made for the payment of claims or, in the case of contractual claims for goods or services furnished or for property leased, from the appropriation of the agency which received such goods or services or occupied such property. Within five days after the convening of each regular session, the claims commissioner shall report to the general assembly on all claims decided pursuant to this section."

accept, alter or reject any such recommendation and shall not be required to hold public hearings thereon." General Statutes § 4-159.[9] In rejecting the commissioner's recommendation for disapproval of any award to the plaintiff, the legislature was clearly performing its function as authorized by § 4-159.

With respect to permission to sue the state, however, "[w]hen the claims commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." General Statutes § 4-160 (a).[10] There is no statutory provision requiring legislative approval of the commissioner's action in granting or denying permission to sue the state. The plaintiff's "notice of claim" filed with the commissioner contained not only a request for permission to sue the state, but also "a statement of the amount requested," in accordance with General Statutes § 4-147 (3).[11] The order of

[9] "[General Statutes] Sec. 4-159. RECOMMENDATIONS FOR PAYMENTS IN EXCESS OF SEVEN THOUSAND FIVE HUNDRED DOLLARS. After hearing, the claims commissioner shall make his recommendations to the general assembly for the payment or rejection of amounts exceeding seven thousand five hundred dollars. Within five days after the convening of each regular session and at such other times as the speaker of the house of representatives and president pro tempore of the senate may desire, the claims commissioner shall submit such recommendations to the general assembly, together with a copy of his findings and of the hearing record of each claim so reported. The general assembly may accept, alter or reject any such recommendation and shall not be required to hold public hearings thereon."

[10] See footnote 5, supra.

[11] General Statutes § 4-147 provides in part: "Any person wishing to present a claim against the state shall file with the clerk of the office of the claims commissioner a notice of claim, in duplicate, containing the following information: (1) The name and address of the claimant; the name and address of his principal, if the claimant is acting in a representative capacity, and the name and address of his attorney, if the claimant is so represented; (2) a concise statement of the basis of the claim, including the date, time, place and circumstances of the act or event complained of; (3) a statement of the amount requested, and (4) a request for permission to sue the state, if such permission is sought."

the commissioner in dismissing the claim, in which the amount requested was specified to be $5 million was twofold: "No award can be granted and permission to sue is denied." In submitting to the legislature his recommendation that no award be granted, the commissioner must be deemed to have acted pursuant to § 4-159, which requires that he seek approval of his rejection of claims exceeding $7500.

The action of the legislature in rejecting the commissioner's recommendation that no award be made on the plaintiff's claim, therefore, does not also imply a legislative grant of authority to sue the state or to present the request for such permission once more to the commissioner.[12] The commissioner never submitted his denial of permission to sue to the general assembly for its consideration, nor was he required to do so. The rejection of the recommendation denying any award in no way detracted from the effectiveness of the commissioner's denial of permission to sue. Indeed, the legislature itself recognized that rejection of the recommendation standing alone would not help the plaintiff and for that reason proceeded thereafter to enact the special act allowing the claim to be pursued despite the bar of § 4-148 (a). Accordingly, we reject the plaintiff's claim that the special act is a mere superfluity and that the rejection of the commissioner's recommendation denying any award implicitly accomplished the same result.

---

[12] It should be noted that, except where new evidence has been discovered, a claimant may not, at least without the benefit of a special act, seek reconsideration of a claim by the commissioner after his initial determination. "Except as provided in section 4-156, no claim once considered by the claims commissioner, by the general assembly or in a judicial proceeding shall again be presented against the state in any manner." General Statutes § 4-148 (b). The exception referred to is as follows: "Upon the discovery of new evidence, any claimant aggrieved by an order of the claims commissioner rejecting or recommending the rejection of his claim, in whole or in part, may apply for rehearing." General Statutes § 4-156.

## IV

The plaintiff maintains that judicial review of the constitutionality of the special act is precluded by General Statutes § 4-164 (b), which provides that "[t]he action of the claims commissioner in approving or rejecting payment of any claim or part thereof shall be final and conclusive on all questions of law and fact and shall not be subject to review except by the General Assembly." This statute, however, applies only to the commissioner's action "in approving or rejecting payment of any claim or part thereof" and corresponds to the provision of § 4-159 requiring the commissioner to recommend to the General Assembly the "payment or rejection" of claims exceeding $7500. As we have previously explained, there is no requirement that the commissioner's grant or denial of permission to sue the state be submitted to the legislature for approval. Section 4-164 (b), therefore, by its very terms is inapplicable to the grant of permission to sue that the commissioner made pursuant to the special act. Having concluded that there is no statutory bar to the state's challenge of this action of the commissioner, we need not address the issue of whether, if such a bar existed, it would be constitutional thus to insulate from judicial review an enactment claimed to violate article first, § 1.

## V

We have construed the provision of article first, § 1 prohibiting "exclusive public emoluments or privileges" to apply to legislation preferring certain individuals over others when wholly unrelated to the public interest. "No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual. Its validity is contingent, at least

in part, upon its furthering a public purpose; if enacted with that end in view, legislation can be sustained even though it may incidentally confer a direct benefit upon an individual or a class." *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 106, 90 A.2d 862 (1952). "Only if an act serves some public purpose can it be constitutionally sufficient." *Tough* v. *Ives,* supra, 292.

Under circumstances like those in the present case, where a special act has allowed a person named therein to bring a suit based upon a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment. *Vecchio* v. *Sewer Authority,* 176 Conn. 497, 503–507, 408 A.2d 254 (1979) (special act validating an appeal from a sewer assessment commenced after expiration of the time for taking such an appeal held unconstitutional); *Hillier* v. *East Hartford,* supra (special act validating notice of sidewalk defect given to municipality after time allowed held unconstitutional). We have also found no public purpose in a special act, which we held invalid, allowing a plaintiff to sue the highway commissioner in negligence and removing the concurring negligence of anyone but the plaintiff and her father as a defense. *Tough* v. *Ives,* supra, 292–94.

The plaintiff maintains, nevertheless, that the special act he relies upon may be sustained as serving some public purpose because the legislature could reasonably have concluded that various state officials were at least partly responsible for the delay in presenting the claim. He cites *Sanger* v. *Bridgeport,* supra, where this court upheld a special act validating notice of an injury caused by a sidewalk defect that failed to comply with the statutory requirements. The notice had been prepared by an assistant city clerk, upon whom the plaintiff had

relied for its preparation and to whom she had given all necessary information. We concluded that the plaintiff had presented "a situation which would afford strong equitable grounds for legislative interference" and that these reasons presumably had motivated passage of the special act. "Municipalities may be compelled not only to recognize their legal obligations but also to discharge those of an equitable and moral nature." Id., 189. In relying upon *Sanger,* the plaintiff claims that the state's delay in preparing the autopsy report and in making the hospital records available was a significant factor in the delay.

The plaintiff, however, is unable to explain how any action of a state employee impeded the decedent's family in discovering the basis for a wrongful death action and caused them to make no effort to prosecute their claim until almost six months beyond the period for its presentation allowed by § 4-148 (a). There are no circumstances in this case comparable to the situation in *Sanger,* where the municipal clerk had been responsible for the deficiencies in the statutory notice. The inaction of the decedent's family here was not induced by any agency of the state and cannot serve as the basis for implying any equitable or moral obligation on the part of the state.

The plaintiff also relies upon two additional grounds, recognized in *Tough* v. *Ives,* supra, 294, as a basis for sustaining the validity of a special act creating a privilege for a particular individual: (1) "where at most the remedy, rather than the grounds of the action, was affected"; and (2) "where no right of the opposing party was affected." The first ground we have held not to be applicable to a statutory cause of action, such as a claim against the state, because in such an action "the very existence of the right in the first instance depends upon the giving of the required statutory notice." *Hillier* v. *East Hartford,* supra, 105. The second ground

also we have held to be inapplicable where the notice is a condition precedent to a statutory cause of action, because the absence of such notice is a defense that constitutes a property right vested in the defendant. Id., 109.

We conclude, therefore, that the special act, which benefits only the estate of the decedent who is named therein, does constitute the award of an exclusive public emolument or privilege not available to other persons and without a public purpose in violation of article first, § 1. We agree with the trial court that the act is unconstitutional.

There is no error.

In this opinion the other justices concurred.

