[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
The issue presently before this court is whether the motions for summary judgment, respectively filed by the defendant Bristol Hospital and the defendant Brian Hennessey, M.D., should be granted on the ground that no genuine issue of material fact exists because the plaintiffs' action is untimely and barred by the applicable statute of limitations, General Statutes § 52-584, in that the plaintiffs commenced suit over two years after the date of the alleged negligent acts complained of, thereby entitling the defendants to summary judgment as a matter of law.
The relevant facts are as follows. Judy Caswell, Richard Caswell's wife, was pregnant with their son, Nicholas Caswell, when she was under the medical care and treatment of her obstetrician, Brian Hennessey, M.D. Judy Caswell's delivery and Nicholas Caswell's birth were attended and directed by Brian Hennessey, M.D. at Bristol Hospital, which provided obstetric and perinatal care and treatment for Judy Caswell's pregnancy, labor and delivery. On September 6, 1992, Judy Caswell gave birth to her son at Bristol Hospital. By writ, summons and complaint dated September 1, 1995, and served September 5, 1995, Judy Caswell and Richard Caswell, individually and on behalf of their minor son, Nicholas Caswell, brought suit against Bristol Hospital and Brian Hennessey, M.D. for alleged acts of negligence relating to the birth of Nicholas Caswell on September 6, 1992.
The operative complaint, which contains eleven counts, is the CT Page 15790 plaintiffs' fifth amended complaint dated May 5, 1998. Counts one through four are directed against Bristol Hospital, and counts five through eleven are directed against Brian Hennessey, M.D. The counts contain the following allegations, which are pertinent to the motions sub judice.
Count one is a medical negligence claim brought on behalf of minor Nicholas Caswell by his father, Richard Caswell, alleging, inter alia, that Bristol Hospital and its servant, agents and/or employees, while undertaking the medical care and treatment of Nicholas Caswell and Judy Caswell and while acting in concert with the individually named defendant, Brian Hennessey, M.D., failed to exercise reasonable care and skill under the existing circumstances as to the plaintiffs' care, treatment, monitoring, and supervision and that such carelessness and negligence caused Nicholas Caswell to sustain permanent injuries. (Fifth Amended Complaint, Count One, ¶¶ 1-5.) Count one contains additional allegations that Bristol Hospital "failed to advise the Department of Health Services of Dr. Hennessey's alcohol related difficulties in violation of General Statutes § 20-13c" and "failed to provide and have in attendance physicians and obstetrical staff with the requisite knowledge, skill, training and experience to diagnose, and manage and safely deliver this pregnancy. . . ." (Fifth Amended Complaint, Count One, ¶ 5.)
Counts two and three are claims for negligent infliction of emotional distress. The plaintiff mother, Judy Caswell, in count two, and the plaintiff father, Richard Caswell, in count three, respectively allege that Bristol Hospital and its servants, agents and/or employees knew or should have known that its careless and negligent conduct was likely to cause and did cause unreasonable risk of severe psychologic, physiologic and emotional distress. Plaintiffs Judy Caswell and Richard Caswell allege that they have suffered and will continue to suffer severe psychologic, physiologic and emotional distress that are "painful, serious and permanent in their nature and in their effects, and have impaired [their] ability to carry on and enjoy life's activities." (Fifth Amended Complaint, Counts Two and Three, ¶ 11.)
Count four is a medical expense claim brought by Richard Caswell and Judy Caswell, individually, for financial loss due to past and future expenses they have incurred and will continue to incur for the medical care and treatment of their son, Nicholas Caswell, as a result of the medical negligence of Bristol CT Page 15791 Hospital and its servants, agents and/or employees.
The remaining counts of the plaintiffs' fifth amended complaint are directed against Brian Hennessey, M.D. In count five, a medical negligence claim was brought on behalf of minor Nicholas Caswell by his father. Count five contains allegations that Brian Hennessey, M.D. undertook the medical care and treatment of the infant plaintiff and the infant plaintiff's mother in the provision of obstetric and perinatal services. It is alleged that Brian Hennessey, M.D. "failed to exercise that degree of care and skill ordinarily used by obstetricians in that he: failed to adequately and properly care for, treat, monitor and supervise Judy Caswell and the infant plaintiff, Nicholas Caswell; . . . failed to diagnose an arrest of labor; caused and permitted vacuum extraction delivery; . . . failed to perform a Caesarean delivery; failed to recommend or advise a Caesarean delivery; improperly performed multiple attempts at vacuum and forceps delivery; . . . failed to provide and have in attendance physicians and obstetrical staff with the requisite knowledge, skill, training and experience to diagnose and manage and safely deliver this pregnancy. . . ." (Fifth Amended Complaint, Count 5, ¶ 4.) Additional paragraphs in this count contain allegations that Nicholas Caswell sustained serious, painful and permanent injuries and sustained and will continue to sustain financial loss for medical and rehabilitative expenses as well as a diminished earning capacity as a result of the carelessness and negligence of Brian Hennessey, M.D. in attending the pregnancy, labor, delivery and birth.
Count six is a claim for lack of informed consent brought by Judy Caswell and Nicholas Caswell, individually. The plaintiffs allege, inter alia, that their "injuries were caused by the failure of defendant, Brian Hennessey to obtain the plaintiff's, Judy Caswell, informed consent in that he: failed to provide the plaintiffs with sufficient information regarding the risks, hazards and complications of his attendance at the delivery; . . . failed to inform the plaintiffs of alternative recommendations for treatment; . . . failed to warn the plaintiffs of the potential complications of having in attendance an impaired doctor." (Fifth Amended Complaint, Count 6, ¶ 4.)
Count seven, brought by all three plaintiffs individually, alleges wanton and reckless misconduct by Brian Hennessey, M.D. in his treatment and care of Nicholas Caswell and Judy Caswell. The plaintiffs allege that "the defendant acted with wanton and CT Page 15792 reckless disregard of the plaintiff's health and well being, and in violation of his ethical obligations." (Fifth Amended Complaint, Count 7, ¶ 8.) Particularly, the plaintiffs allege, inter alia, that Brian Hennessey, M.D. "treated and cared for the plaintiffs while in an intoxicated state; and, ingested intoxicating liquors during the course of his treatment and care of the plaintiffs." (Fifth Amended Complaint, Count 7, ¶ 4.) It is further alleged that Nicholas Caswell suffered serious, painful and permanent injuries and present and future financial loss as a result of the recklessness of Brian Hennessey, M.D.
Count eight is a Connecticut Unfair Trade Practices Act (CUTPA) claim pursuant to General Statutes § 42-110a. The plaintiffs allege that the wanton and reckless misconduct of Brian Hennessey, M.D. in his treatment and care of the plaintiffs, as alleged in count seven and incorporated in count eight, constitutes a CUTPA violation. They allege that Brian Hennessey, M.D. acted in an unethical manner in the conduct of his trade or commerce as a physician licensed by the State of Connecticut and specializing in and providing obstetric and perinatal services in this State.
Counts nine and ten, respectively brought by Judy Caswell and Richard Caswell, contain claims for negligent infliction of emotional distress. They allege that Brian Hennessey, M.D. knew or should have known that his careless and negligent conduct in attending Judy Caswell's delivery and Nicholas Caswell's birth was likely to cause and did cause them severe psychologic, physiologic and emotional distress. The plaintiffs further allege they will continue to suffer from the stated injuries and that the described conditions have impaired their life enjoyment.
Count eleven is a claim for medical expenses brought by Judy Caswell and Richard Caswell, individually. They allege that they have sustained and will continue to sustain financial loss due to past and future medical expenses incurred and to be incurred by their son as a result of injuries he sustained that were caused by the negligence of Brian Hennessey, M.D.
In response to the plaintiffs' fifth amended complaint, Bristol Hospital filed an answer and special defense dated October 29, 1998. Bristol Hospital's special defense alleges that the plaintiffs' action is time barred by the applicable statute of limitations. Defendant Brian Hennessey, M.D. did not file a special defense. CT Page 15793
Presently before this court are two separate motions for summary judgment. On May 27, 1999, Brian Hennessey, M.D. filed a motion for summary judgment with supporting memorandum of law. He is moving for summary judgment on counts five through eleven of the plaintiffs' fifth amended complaint dated May 5, 1998. On June 10, 1999, Bristol Hospital also filed a motion for summary judgment with supporting memorandum of law. It is moving for summary judgment on counts one through four of the plaintiffs' fifth amended complaint dated May 5, 1998. On August 16, 1999, the plaintiffs filed a motion and memorandum of law in opposition to the defendants' motions for summary judgment. In reply to the plaintiffs' filings, the defendant Brian Hennessey, M.D. filed a responsive memorandum of law on August 20, 1999.
For the reasons cited below, this court finds that a genuine issue of material fact exists as to when the plaintiffs discovered or in the exercise of reasonable care should have discovered that they suffered actionable harm to commence the running of the statute of limitations and that the resolution of the issue should be left to the trier of fact. Therefore, this court hereby denies the defendants' summary judgment motions.
"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.)Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55,707 A.2d 15 (1998).
"In ruling on a motion for summary judgment, the court's CT Page 15794 function is not to decide issues of material fact, but rather todetermine whether any such issues exist." (Emphasis added.) Nolanv. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "[T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment." (Internal quotation marks omitted.)Harvey v. Boehringer Ingelheim Corp. , 52 Conn. App. 1, 5,724 A.2d 1143 (1999).
"In the context of a motion for summary judgment, the court's role is not to decide whether the plaintiffs complied with the statute but whether an issue of material fact regardingcompliance with the statute exists." (Emphasis added.) Rodriguezv. Housing Authority of New Haven, 45 Conn. Sup. 136, 139-40,702 A.2d 417 (1997).
"Summary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci, 238 Conn. 800, 806,679 A.2d 945 (1996). "When a defendant raises the statute of limitations as a special defense the essential elements of the defense become material facts which, if proven at trial, will entitle the defendant to judgment as a matter of law. Therefore, when the materials submitted in support of a defendants motion for summary judgment incontrovertibly establish all the essential elements of his statute of limitations defense, his motion must be granted." Mulcher v. Sokolowski, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 381804 (January 13, 1994, Sheldon, J.).
The Connecticut Appellate Court has held that a defendant may file a motion for summary judgment prior to pleading the statute of limitations as a defense. See Girard v. Weiss,43 Conn. App. 397, 416, 682 A.2d 1078, cert. denied, 239 Conn. 946,686 A.2d 121 (1996). "If we were to hold that a motion for summary judgment cannot be made prior to pleading a statute of limitations as a special defense, we would negate that portion of [Practice Book § 17-44] that provides that a motion for summary judgment can be made `at any time,' without the necessity of closing the pleadings. If a defendant chooses to postpone raising a time limitation as a bar to the plaintiff's cause of action by way of a special defense, in favor of obtaining an earlier disposition by way of summary judgment, we see no reason why he should not be allowed to do so. Limitation defenses are procedural and can be waived." Girard v. Weiss, supra,43 Conn. App. 416. CT Page 15795
"[T]he Superior Court has been split as to whether deposition testimony, either uncertified or certified, may be considered for the purposes of a motion for summary judgment. . . ."Schratwieser v. Hartford Casualty Ins. Co., 44 Conn. App. 754,756 n. 1, 692 A.2d 1283, cert. denied, 241 Conn. 915, 696 A.2d 340
(1997). "[The Connecticut Appellate Court has] not determined it to be improper for a trial court to consider deposition testimony in ruling on a motion for summary judgment." Id., and cases cited therein. Summary judgment is appropriate on statute of limitations grounds when the "material facts concerning the statute of limitations [are] not in dispute. . . ." Burns v.Hartford Hospital, 192 Conn. 451, 452, 472 A.2d 1257 (1984).
The present medical malpractice action is governed by the applicable statute of limitations, General Statutes § 52-584, which states: "No action to recover damages for injury to the person . . . caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, . . . [or] hospital . . ., shall be brought but within two years from thedate when the injury is first sustained or discovered or in theexercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of. . . ." (Emphasis added.) From reading the statute, it is clear that knowledge of facts sufficient to trigger the commencement of the running of the statute of limitations is significant in determining when the statute begins to run. In the present case, knowledge of such facts is particularly significant since the plaintiffs did not commence suit until September 5, 1995, which date is over two years after the date on which the alleged negligence acts occurred, September 6, 1992, but not more than three years from the date of the alleged negligent acts.
"[The Connecticut Supreme Court] has construed the word `injury' in General Statutes § 52-584, which establishes the date for commencement of the period allowed for bringing a malpractice action as "two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered,' to refer to some form of actionable harm. . . . `Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action. . . . The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof." (Citations omitted; emphasis added; internal quotation marks CT Page 15796 omitted.) Merly v. State, 211 Conn. 199, 205-06, 558 A.2d 977
(1989). In the case at bar, a genuine issue of material fact exists as to what date the plaintiffs discovered or in the exercise of reasonable care should have discovered that they sustained some form of actionable harm, so as to commence the running of the statute of limitations.
In deciding whether a medical malpractice action was time barred by General Statutes § 52-584, the Connecticut Supreme Court in Catz v. Rubenstein, 201 Conn. 39, 49, 513 A.2d 98
(1986), held that the trial court erred in granting summary judgment on the ground that the action was barred by the statute of limitations, because "[a] genuine issue of material factexists . . . as to when [the plaintiff] discovered or in the exercise of reasonable care should have discovered her `injury,' that is when she discovered she had suffered `actionable harm,'and the resolution of that question should be left to the trierof fact." (Emphasis added.) "[I]injury occurs when a party suffers some form of `actionable harm.'" (Emphasis in original; internal quotation marks omitted.) Catz v. Rubenstein, supra,201 Conn. 43. "A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence. . . . They are therefore necessary ingredients for `actionable harm.'" (Citations omitted.) Id., 44.
"A cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's wrongfulconduct. . . . [T]he statute of limitations begins to run when the claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another. . . . The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Citations omitted; emphasis in original; emphasis added; internal quotation marks omitted.) Id., 47. "A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case. . . . The factor which is dispositive of the present case for the purpose of the defendant's motion for summary judgment is whether § 52-584 bars the plaintiffs' suit. That in turn is determined by when [the plaintiffs] discovered or in the exercise of reasonable care should have discovered [their] `injury'; that is when [they] discovered or in the exercise of CT Page 15797 reasonable care should have discovered that [they] had suffered some form of `actionable harm.'" (Citations omitted; internal quotation marks omitted.) Catz v. Rubenstein, supra,201 Conn. 48.
In the procedurally similar case of Kahaner v. Berkley, Superior Court, judicial district of New Britain at New Britain, Docket No. 472985 (March 24, 1999, Robinson, J.), the court, faced with an issue similar to the one in the present case, analyzed and relied on Catz when it denied summary judgment because material issues of fact regarding the date the plaintiff discovered or should have discovered his injury were in dispute. "In order to start the running of the statute of limitations the patient must discover `actionable harm.' The Supreme Court also addressed the subject of what constitutes `actionable harm' and discovery in Catz v. Rubenstein, 201 Conn. 39, 43 (1986)."Kahaner v. Berkley, supra, Superior Court, Docket No. 472985.
"In Catz, plaintiff's decedent, a patient of the defendant, consulted him after she felt a lump in her breast. The defendant told her that there was nothing to worry about after he examined her and ordered a mammogram. In 1980, when plaintiff's decedent found another lump in her breast, she spoke with the defendant, who again told her not to worry. Later that year after a second mammogram, plaintiff's decedent learned that she had breast cancer. The plaintiff's decedent was aware that she had cancer no later than May 1, 1980. However, until April, 1982, she thought that this finding of cancer was a new growth, unrelated to her previously discovered lumps. Suit was filed June 11, 1982. The defendant's motion for summary judgment based on the statute of limitations was granted by the trial court. The Supreme Court reversed, holding that until the plaintiff's decedent had suffered actionable harm, the statute of limitations had not started to run. Actionable harm, it stated, requires a breach of a duty; and resulting harm. . . . [T]he Court held that in order to sustain his burden, the defendant would have to show that there were no issues of material fact regarding when the plaintiff knew or should have known that she sustained `actionable harm.' . . . Because the court concluded that there were material issues of fact in dispute about the date of discovery, it overturned the trial courts granting of the defendants Motion for Summary Judgment. Citing the legislative history of § 52-584 the Catz Court dismissed the defendantsargument that the statute of limitation starts to run on the dateof the alleged negligent act or omission. "The use by the CT Page 15798 legislature of the word `injury' rather than `act or omission in the initial part of § 52-584 was obviously a deliberate choice . . .'" Kahaner v. Berkley, supra, Superior Court, Docket No. 472985, quoting Catz v. Rubenstein, supra, 201 Conn. 49.
In Catz, "the causal connection between the plaintiff's decedent's injury and the defendant's conduct was not readily discoverable at the time that she learned of her medical condition. . . . An objective review of the facts surrounding the incident in Catz, reveal that there was a genuine issue of fact in dispute as to when the plaintiff's decedent learned or should have learned of her injury. The Supreme Court in Catz deemed it reasonable to postulate that though she knew of her metastasized cancer in May, 1990, the facts were not clearly established to securely say that she knew of the causal link between her cancer and the defendant's acts and/or omissions. The Court further deemed it reasonable to conclude that there was no indication that plaintiff's decedent should have made this discovery in May, 1990." Kahaner v. Berkley, supra, Superior Court, Docket No. 472985, citing Catz v. Rubenstein, supra, 201 Conn. 49.
In light of the binding and authoritative precedent of Catz
and in reviewing the pleadings and deposition testimony set forth in the materials submitted in support of and in opposition to summary judgment, this court finds that there exists a genuine issue of material fact as to when the plaintiffs discovered or in the exercise of reasonable care should have discovered the causal nexus, if any, between the injuries the plaintiffs allegedly sustained during delivery and childbirth and the allegedly negligent conduct of the defendants. As such, the resolution of the question, on what date the plaintiffs discovered or in the exercise of reasonable care should have discovered that they sustained some form of actionable harm, is one for the trier of fact. Furthermore, this court is not persuaded by the defendants' arguments, which are addressed below.
In his supporting memorandum of law, the defendant Brian Hennessey, M.D., argues that there is no genuine issue of material fact that the plaintiffs filed their action after the applicable two year statute of limitations period lapsed, thereby making their action time barred and entitling him to summary judgment as a matter of law. Particularly, Brian Hennessey, M.D. argues that the plaintiffs' action is barred by General Statutes § 52-584, which contains two specific time requirements that must be met. One, that the plaintiff bring the action "within two CT Page 15799 years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . [and, two,] that in no event shall an action `be brought more than three years from the date of the act or omission complained of.'" (Defendant Hennessey's Memo, p. 4.) Brian Hennessey, M.D. states that the action was brought within three years of the act or omission complained of; "however, the suit must have been brought within two years from the date the injury was `sustained or discovered or in the exercise of reasonable care should have been discovered.'" (Defendant Hennessey's Memo, p. 5.)
Brian Hennessey, M.D. further argues that "the harm need not have reached its fullest manifestation before the statute begins to run" and cites Lambert v. Stovall, 205 Conn. 1, 6,529 A.2d 710 (1987), and Merly v. State,211 Conn. 199, 206, 558 A.2d 977
(1989), for the supporting proposition that "the statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof." (Defendant Hennessey's Memo, p. 5, 8.) He argues that the statute of limitations began to run on September 6, 1992, the date of delivery when the alleged injuries occurred and when "the plaintiff was aware of her alleged `injury' or in the exercise of reasonable care should have discovered a causal relationship between Dr. Hennessey's allegedly negligent treatment and the resulting injury as contemplated by Connecticut General Statutes Section 52-584." (Defendant Hennessey's Memo, p. 6.) In support of the foregoing, Brian Hennessey, M.D. cites Burns v. Hartford Hospital,192 Conn. 451, 460, 472 A.2d 1257 (1984), and Barnes v. Schlein,192 Conn. 732, 738-39, 473 A.2d 1221 (1984). (Defendant Hennessey's Memo, p. 5, 10.)
In addition, Brian Hennessey, M.D. cites to Judy Caswell's deposition testimony, which he attached to his memorandum of law, in support of his argument that she became aware of some form of actionable harm on September 6, 1992, when the alleged negligent delivery occurred. Brian Hennessey, M.D. argues that the plaintiffs' causes of action lapsed September 6, 1994, two years after the date of delivery, September 6, 1992, when the alleged injuries and some form of actionable harm of which the plaintiff knew or in the exercise of reasonable care should have discovered commenced the running of the statute of limitations, which ran before the plaintiffs' action was served on September 5. 1995. In summation, Brian Hennessey, M.D. argues that no genuine issue of CT Page 15800 material fact exists as to the plaintiffs' action being time barred by the statute of limitations and that he, therefore, is entitled to judgment as a matter of law.
Defendant Bristol Hospital also argues that the plaintiffs' action is barred by the applicable statute of limitations, General Statutes § 52-584. It argues that the plaintiffs should have discovered their alleged injuries on the date of delivery, September 6, 1992, and no later than two weeks following the date of delivery. In support of its argument, Bristol Hospital cites to the deposition testimony of Judy Caswell and Richard Caswell. For instance, Bristol Hospital cites to deposition testimony in which the plaintiff parents noted that the infant plaintiff's condition was similar to that of a rag doll, limp and blue. (Defendant Bristol Hospital's Memo, p. 4.) It further cites deposition testimony that the plaintiffs considered hiring an attorney, at the suggestion of friends, shortly after their son's birth, but then decided not to do so. (Defendant Bristol Hospital's Memo, p. 5.) Bristol Hospital argues that the plaintiffs suffered some form of actionable harm on the delivery date, when the applicable statute of limitations began to run. It argues that "[t]he Connecticut Supreme Court has construed an injury to be some form of `actionable harm' which `occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered, the essential elements of a cause of action.' Merly v. State, 211 Conn. 199, 205-6 (1989); see alsoCatz v. Rubenstein, 201 Conn. 39 (1986) and Burns v. HartfordHospital, 192 Conn. 451 (1984)." (Defendant Bristol Hospital's Memo, p. 9.)
Further, Bristol Hospital, again relying on Merly v. State, argues that "[w]hen actionable harm should have been discovered is not a question of fact, but is a matter of law."(Defendant Bristol Hospital's Memo, p. 10.) It further argues that the latest possible date the plaintiffs could have been aware of an actionable harm was September 20, 1992, the date of Judy Caswell's postpartum examination with Brian Hennessey, M.D. (Defendant Bristol Hospital's Memo, p. 11.) In addition, Bristol Hospital argues that the plaintiffs had evidence of actionable harm before receiving information from Adrienne Hennessey, the estranged wife of Brian Hennessey, M.D., allegedly informing them for the first time that Brian Hennessey, M.D. was allegedly intoxicated during the delivery of their son. It argues that the telephone call provides another possible claim in addition to the other possible claims already known to the plaintiffs, and that CT Page 15801 the telephone call allegedly occurring on June 9, 1995, was not the first time the plaintiffs learned of an actionable harm. In summation, Bristol Hospital argues that the plaintiffs' action for injuries allegedly arising out of the negligent delivery occurring on September 6, 1992, was not brought within the statutorily required time period, but served on September 5, 1995, almost three years after the plaintiffs discovered an actionable harm and that the action is barred, thereby entitling it to summary judgment as a matter of law.
In their memorandum of law in opposition to the defendants' motions for summary judgment, the plaintiffs argue that they brought this lawsuit three months after discovering that they suffered an actionable harm, when on June 9, 1995, Judy Caswell received a telephone call from Adrienne Hennessey, the wife of Brian Hennessey, M.D. The plaintiffs argue that Adrienne Hennessey made the following representations to Judy Caswell during the telephone call of June 9, 1995, which were allegedly not previously known by them. The representations include the following allegations: that Brian Hennessey, M.D. had consumed alcohol prior to Nicholas Caswell's delivery; that Brian Hennessey, M.D. has a history of drug abuse; that Brian Hennessey, M.D.' s shaking hands were the cause of his inability to deliver Nicholas; and, that Bristol Hospital was aware of Brian Hennessey, M.D.'s problems. The plaintiffs argue that they did not have knowledge of the facts necessary to form a reasonable belief that they had suffered actionable harm until June 9, 1995. They argue that up until the date of June 9, 1995, they believed that the injuries they suffered were unavoidable due to a difficult childbirth in which Nicholas Caswell's head became stuck in the birth canal thereby requiring the use of forceps and vacuum extraction. Prior to the date of June 9, 1995, the plaintiffs argue that they did not have reason to think or know that their injuries were the result of inappropriate and/or negligent care by the defendants. As such, the plaintiffs argue that their action was timely brought pursuant to the governing statute of limitations, General Statutes § 52-584, and within only three months of discovering that they had sustained actionable harm.
As to the parties' foregoing arguments, this court's review of Burns and Barnes, cited by the defendants, finds these cases to be factually dissimilar from the present case, just as theCatz court notes how Burns and Barnes are readily distinguishable from Catz. The Burns court affirmed the decision of the trial CT Page 15802 court which granted summary judgment on the ground that General Statutes § 52-584 was a bar to the plaintiffs' malpractice action. The Catz court stated that "[i]n Burns, the plaintiff knew on November 10, 1975, of the causal relation between the defendant's alleged negligence, the insertion of contaminated intravenous tubes into her infant son's leg, and the resulting harm, yet did not commence an action until almost three years later, on November 1, 1978, after her son's condition worsened. The plaintiff in that case was therefore aware of `actionable harm' or `injury' as contemplated by § 52-584 more than two years prior to starting suit and we held that `the harm need not have reached its fullest manifestation before the statute begins to run.'" Catz v. Rubenstein, supra, 201 Conn. 45.
Further, the Catz court stated that "[i]n Barnes v. Schlein,192 Conn. 732, 473 A.2d 1221 (1984), we also indicated that the time when a plaintiff discovers or in the exercise of reasonable care should have discovered `actionable harm' is the time used in determining when the two year period of limitation of § 52-584
begins to run. . . . Again, however, we affirmed the ruling of the trial court on a motion for summary judgment that the statute was a bar to the plaintiff's cause of action because the plaintiff was aware of the causal connection between the defendant's negligence and her injury and thus knew that she had suffered `some form of actionable harm' . . . more than two and one-half years prior to commencing suit." (Citations omitted; internal quotation marks omitted.) Id., 45. This court finds that the present case is similar to Catz and different from Burns andBarnes for the following reason — the instant plaintiffs' lack of knowledge of facts relating to the causal connection between the alleged negligence and resulting injuries.
With respect to Lambert v. Stovell, supra, 205 Conn. 1, the present case is factually and procedurally different fromLambert. In Lambert, the trial court's jury instruction on the two year statute of limitations applicable to medical malpractice actions was challenged by the plaintiff who argued that the jury should have been charged on the three year statute of limitations applicable to intentional tort actions. Id., 3-5. The Lambert
court upheld the trial court on the grounds that the plaintiff's action was based on lack of informed consent and that the plaintiff did not plead an intentional tort. Id., 6-7. The distinguishing facts of Lambert are as follows. The plaintiff patient, Lambert, was being treated by the defendant doctor, Stovell, for an ankle injury in April, 1977. Lambert v. Stovell, CT Page 15803 supra, 205 Conn. 2. Stovell operated on Lambert's ankle on June 1, 1977. Id. Lambert was readmitted to the hospital on June 28, 1977, after Stovell discovered that Lambert had developed an ankle infection. Id. During July and August of 1977, Stovell discovered and informed Lambert about the ankle infection and non-union at the fusion site. Id. Lambert did not commence suit until March 5, 1980. Id., 3. As such, Stovell filed a special defense claiming that the two year statute of limitations for an informed consent claim had run pursuant to General Statutes §52-584. Id. Unlike the plaintiff in Lambert, the plaintiffs in the present case did not have knowledge of facts indicating that they had suffered some form of actionable harm.
See also Slater v. Mount Sinai Hospital, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 542007 (June 11, 1997, Sullivan, J.), where the court denied the defendant's motion for summary judgment arguing that the plaintiffs' medical malpractice action commenced September 13, 1994, relating to the stillborn birth of their son on September 5, 1992, was not time barred pursuant to General Statutes §52-584, because the plaintiffs did not have probable cause to believe that a legal injury had occurred until 1993.
In light of the foregoing, determining the crucial date of when the statute of limitations begins to run based on when the plaintiffs discovered or in the exercise of reasonable care should have discovered that they sustained some form of actionable harm is a genuine issue of material fact for the fact finder. Given that a genuine issue of material fact exists in this case concerning the commencement of the running of the statute of limitations, this court finds summary judgment to be inappropriate. Because the pleadings and deposition testimony submitted by the parties leave open for resolution by the trier of fact a genuine issue of material fact as to when the plaintiffs discovered or in the exercise of reasonable care should have discovered that they sustained actionable harm to commence the running of the statute of limitations to determine if a timely action was brought, this court hereby denies the defendants' motions for summary judgment.
WILLIAM L. WOLLENBERG SUPERIOR COURT JUDGE CT Page 15804