# MOUNTAINDALE CONDOMINIUM ASSOCIATION, INC. *v.* JOSEPH ZAPPONE ET AL.
## (AC 18538)

Lavery, Landau and Dupont, Js.[1]

Argued December 10, 1999—officially released August 15, 2000

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

James W. Oliver, with whom, on the brief, was Durwin P. Jones, for the appellant (plaintiff).

Michael C. Deakin, for the appellees (defendants Robert Norton et al.).

William C. Berry, for the appellee (defendant town of Thomaston).

*Opinion*

LAVERY, J. The plaintiff, Mountaindale Condominium Association, Inc., appeals from the judgment of the trial court rendered after the granting in part of the defendants'[2] motions for summary judgment. On appeal, the plaintiff claims that the court improperly (1) applied the statute of limitations, General Statutes § 52-584,[3] where the defendants failed to allege the statute as a

---

[2] This appeal involves only the defendants Robert Norton; Carmella Lecko, executrix of the estate of Robert Lecko; and the town of Thomaston. They are referred to collectively as the defendants. The named defendant, Joseph Zappone, and other defendants are not parties to this appeal.

[3] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

special defense, (2) applied the doctrine of constructive notice where fraudulent concealment was pleaded, (3) engaged in fact-finding where it found that the plaintiff had constructive notice of building code violations and failed to make reasonable inquiry, (4) ignored factual predicates that, as a matter of law, give rise to genuine issues of material fact concerning the fraudulent concealment by the defendants and (5) concluded that the continuing course of conduct doctrine did not toll the statute of limitations. We affirm the judgment of the trial court.

On January 13, 1995, according to the deputy sheriff's return of service, the plaintiff instituted causes of action against multiple defendants, alleging, in a thirty-five count complaint, violations of various building and fire codes with respect to the construction of Mountaindale Condominiums (Mountaindale) in Thomaston. The defendant Carmella Lecko's decedent, Robert Lecko, who died in May, 1992, was the building inspector who had issued the building permits and certificates of occupancy for the condominium units.[4] The defendant town of Thomaston (town) employed Lecko as its building inspector and the defendant Robert Norton as its fire marshal.

On April 2, 1997, the plaintiff filed a fifth revised complaint. Counts twenty-two and twenty-three were against Lecko and Norton,[5] and counts twenty-four and twenty-five were against the town.[6] The plaintiff alleged that the named defendant, Joseph Zappone, who constructed Mountaindale, created the plaintiff by declaration, with subsequent amendments, pursuant to the

---

[4] Subsequent reference to Lecko is to the defendant Carmella Lecko's decedent.

[5] Count twenty-two sounds in recklessness, and count twenty-three sounds in nuisance.

[6] Count twenty-four sounds in recklessness, and count twenty-five sounds in nuisance.

laws of the state of Connecticut on or about November 13, 1986. The named defendant controlled Mountaindale until April, 1988, when the plaintiff assumed control. The plaintiff further alleged that the named defendant failed to build the condominium units in accordance with local and state building codes. According to the allegations of the complaint, Lecko was reckless in issuing certificates of occupancy for the condominium units, and his recklessness created a nuisance. Furthermore, the plaintiff alleged that Lecko and Norton[7] fraudulently concealed the construction defects. The plaintiff claims that the town, pursuant to General Statutes § 52-557n (b) (7), acted in reckless disregard of the health and safety of the plaintiff's unit owners and their families, was reckless in its employment and supervision of Lecko and Norton, and created a nuisance by recklessly permitting the certificates of occupancy to be issued.

The defendants filed motions for summary judgment on January 15, 1998, claiming that the plaintiff's causes of action were time barred and that the plaintiff had failed to state a cause of action in nuisance.[8] The plaintiff objected to each motion. All parties submitted affidavits and evidence in support of their various positions. The court granted in part the defendants' motions for summary judgment because the plaintiff's causes of action were barred by § 52-584 or General Statutes § 52-577. The plaintiff appealed. Additional facts will be discussed as needed.

Our review of the court's granting of motions for summary judgment involves questions of law and is de

---

[7] Although it did not allege it, the plaintiff claims Norton should have been aware of the absence of fire walls in the attics in 1991 when he was employed by a unit owner to install a pull down stairway in the attic of the unit.

[8] In view of our conclusion that the plaintiff's causes of action are time barred, we do not reach the issue of whether the plaintiff failed to allege a cause of action sounding in nuisance.

novo. See *Serrano* v. *Burns*, 248 Conn. 419, 425, 727 A.2d 1276 (1999). Practice Book § 17-49, formerly § 384, "requires that judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' A 'material fact' is a fact that will make a difference in the result of the case. See *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578, 573 A.2d 699 (1990). The facts at issue are those alleged in the pleadings. See *Plouffe* v. *New York, N.H. & H.R. Co.*, 160 Conn. 482, 489, 280 A.2d 359 (1971). The party seeking summary judgment 'has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law.' . . . *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See Practice Book §§ [17-45 and 17-46]. 'In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.' . . . *Connell* v. *Colwell*, 214 Conn. 242, 246–47, 571 A.2d 116 (1990). A motion for summary judgment 'is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact.' *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 543, 494 A.2d 555 (1985)." *Beebe* v. *East Haddam*, 48 Conn. App. 60, 64, 708 A.2d 231 (1998).

"While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348,

1356, 89 L. Ed. 2d 538 (1986), a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570, 94 L. Ed. 2d 762 (1987). *Gallien* v. *Connecticut General Life Ins. Co.*, 49 F.3d 878, 882 (2d Cir. 1995). On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 222, 435 A.2d 24 (1980). *2830 Whitney Avenue Corp.* v. *Heritage Canal Development Associates, Inc.*, 33 Conn. App. 563, 567, 636 A.2d 1377 (1994)." (Internal quotation marks omitted.) *Norse Systems, Inc.* v. *Tingley Systems, Inc.*, 49 Conn. App. 582, 591, 715 A.2d 807 (1998).

I

The plaintiff first claims that the court improperly considered § 52-584 as a bar to its claims because the defendants did not allege that particular statute of limitation as a special defense. We disagree.

Our rules of practice clearly state that "[n]o facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus . . . the statute of limitations . . . must be specially pleaded . . . ." Practice Book § 10-50, formerly § 164. "Where several matters of defense are pleaded, each must refer to the cause of action which it is intended to answer, and be separately stated and designated as a separate defense, as, *First Defense, Second Defense*, etc. Where the complaint or counterclaim is for more than one cause of action, set forth in several counts,

each separate matter of defense should be preceded by a designation of the cause of action which it is designed to meet, in this manner: *First Defense to First Count, Second Defense to First Count, First Defense to Second Count,* and so on. . . ." (Emphasis in original.) Practice Book § 10-51, formerly § 165. "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." Practice Book § 10-3 (a), formerly § 109A (a).

Here, Lecko and Norton pleaded § 52-577 as a bar to the plaintiff's causes of action against them, but without referencing the count or counts to which it applied, as required by Practice Book § 10-51, formerly § 165. The plaintiff, however, did not file a request to revise, asking Lecko and Norton to allege their special defenses in accordance with our rules of practice. The plaintiff merely filed a general denial of the special defenses. As to the town, it also did not plead its special defenses in explicit compliance with our rules of practice, but its special defenses were pleaded separately as to both counts against it. The town alleged § 52-577 as a special defense to both counts. The plaintiff denied the special defense.

In its motion for summary judgment, the town asserted both §§ 52-577 and 52-584 as precluding the plaintiff's causes of action, arguing that count twenty-four was barred by § 52-584[9] and § 52-577 barred count

---

[9] In its memorandum of law in support of its motion for summary judgment, the town asserted that General Statutes § 52-584 bars count twenty-four of the complaint because it alleges reckless and wanton disregard, but did not consider whether the damages the plaintiff alleged are consistent with the statute. Section 52-584 provides in relevant part, "No action to recover damages for *injury to the person, or to real or personal property,* caused by negligence, or by reckless or wanton misconduct . . . ." (Emphasis added.) In affirming the judgment, we do not reach the question of whether the plaintiff's complaint properly alleged a claim for injury to real or personal property and, thus, whether § 52-584 or General Statutes § 52-577 was the statute of limitation that would bar a cause of action such as the one alleged by the plaintiff in count twenty-four.

twenty-five. Lecko and Norton claimed that count twenty-two was barred by § 52-584 and that count twenty-three was barred by the applicable statute of limitation without specifically designating the applicable statute.[10] The plaintiff did not object to the statutory basis of the motions for summary judgment or bring to the court's attention the fact that the defendants had not alleged § 52-584 as a special defense. The plaintiff, therefore, waived any objection to the defendants' failure to plead § 52-584 as a special defense. See *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.*, 203 Conn. 123, 132, 523 A.2d 1266 (1987); *Carnese* v. *Middleton*, 27 Conn. App. 530, 537, 608 A.2d 700 (1992).

Our Supreme Court has "repeatedly held that '[t]he failure to file a special defense may be treated as waived when it appears that no objection was raised to the offer of evidence on the issue at the trial.' *Frager* v. *Pennsylvania General Ins. Co.*, 161 Conn. 472, 479, 289 A.2d 896 (1971); see *Alderman* v. *Hanover Ins. Group*, 155 Conn. 585, 590, 236 A.2d 462 (1967); *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.*, 151 Conn. 463, 466, 199 A.2d 698 (1964); see also *Mainolfi* v. *Brazee*, 135 Conn. 435, 437, 65 A.2d 261 (1949); *O'Donnell* v. *Groton*, 108 Conn. 622, 625, 144 A. 468 (1929)." *Damora* v. *Christ-Janer*, 184 Conn. 109, 112, 441 A.2d 61 (1981). Although the cited cases apply the doctrine of waiver when no objection is made to the introduction of evidence *during trial*, we conclude that the doctrine is equally applicable when no objection is made to the statutory basis of a motion for summary judgment. The court, therefore, properly considered § 52-584 as a defense to counts twenty-two and twenty-four of the plaintiff's complaint.

---

[10] The court assumed that Lecko and Norton intended General Statutes § 52-577 to apply to count twenty-three because that count sounds in nuisance. Lecko and Norton alleged § 52-577 in their special defenses.

## II

The plaintiff's second claim is that the court improperly applied the doctrine of constructive notice where fraudulent concealment was pleaded.[11] Because we conclude that the court properly determined that there was no genuine issue of material fact that the plaintiff knew of actionable harm in 1989 and that its cause of action was time barred, we need not reach the issues of constructive notice and fraudulent concealment.

The following facts are relevant to the trial court's conclusion that the plaintiff knew of actionable harm in 1989. The complaint alleged that between November, 1986, and November, 1987, Lecko issued certificates of occupancy for each unit that was sold, certifying that each unit substantially conformed to the relevant building code and regulations. The complaint also alleged that condominiums such as Mountaindale were required to be built with fire separation walls with a fire resistant rating of not less than one hour, adequate venting and shingles that are installed with underlayment and are hand sealed. Mountaindale, it was alleged, was constructed in violation of the building code and the fire code because none of the units have mandatory, continuous fire separation walls between them, exhaust fans for second floor bathrooms are vented into the attic rather than outside, bricks were

---

[11] On the basis of our review of the pleadings, we note that the plaintiff did not affirmatively plead General Statutes § 52-595 in response to the defendants' special defenses, which alleged that the plaintiff's claims were barred by the applicable statutes of limitation. "In order to raise a claim of fraudulent concealment, the party challenging a statute of limitations defense must affirmatively plead it. . . . In the present case, the reply filed by the plaintiffs contained a general denial of the defense. This was insufficient." (Citations omitted.) *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 163, 464 A.2d 18 (1982) (claim not properly before court). One of the defendants raised this issue at oral argument before the trial court, but on appeal the defendants did not raise the issue as an alternate ground on which the judgment should be affirmed. We therefore deem the argument abandoned.

placed on roofing shingles causing them to buckle and fall, and shingles were laid without underfelt. The plaintiff alleged that it did not know that the construction of the condominium units violated the building code or fire code until September, 1993, at the earliest. The plaintiff also alleged that some of the building and fire code violations were not known until October, 1994.

Further, the plaintiff alleged that the violations of the building code were latent and could not be discovered with reasonable diligence. According to the plaintiff, the defendants intentionally and fraudulently concealed the defective construction by issuing certificates of occupancy, warranting that the condominium units were in substantial compliance with the building and fire codes. Furthermore, according to the plaintiff, the purpose of the fraudulent concealment was to delay the plaintiff's discovering that it had a cause of action.

Through discovery, the parties obtained documents and testamentary evidence, some of which they submitted in support of or objection to the summary judgment motions. The defendants submitted, among other things, a memorandum dated August 2, 1989, from Daniel Portanova, the president of the plaintiff's board of directors, to Andrew Gionta, one of the owners of the Mountaindale property management company (property manager). The memorandum instructed the property manager, "Call lawyer, we want a written legal opinion of noncompliance of builder's work *with building codes*. Can we force the builder to remedy the situation? *Examples* are *no fire walls in attics* and improper fire walls between units. Also, could the town condemn units if we notify the building inspector of the problems." (Emphasis added.)[12]

---

[12] The defendants also submitted a copy of the minutes of the January 20, 1992 meeting of the plaintiff's board of directors. The minutes demonstrate that the directors, in 1992, knew unequivocally of building code violations at Mountaindale and, at that time, discussed bringing an action against the town's building inspector.

In its motion for summary judgment, the town took the position that both §§ 52-577 and 52-584 provide that no cause of action may be brought but within the time specified "from the action or omission complained of." It argued that the date of the act or omission complained of was the time the conduct occurred, not the date the plaintiff first sustained damages. The act or omission of which the plaintiff complained was the improper construction of the units in violation of building and fire codes. The town took the position that the plaintiff had knowledge of the building code violations and actionable harm no later than August, 1989, and that therefore the action that was commenced more than five years later was untimely.

The plaintiff objected to the motions for summary judgment, and presented affidavits and deposition testi-

---

The minutes of the plaintiff's board of directors of January 20, 1992, state in relevant part: "Dan Leveillee brought up the problems we are having with various buildings. He also pointed out that what appears on the blueprints included in the Resale package is not what was built, i.e. 15 lb. felt paper on the roof, brick fronts, shutters, etc. The question was asked of Walt whether or not he thought it was feasible to go after the Building Inspector of Thomaston for these code violations. Walt told the Board that he felt it would not be worth the hassle or legal fees to fight Joe Zappone and/or the Town of Thomaston. Walt says that generally a judge will rule that condo owners pay X number of dollars for their units, and they are generally not top of the line, so this is the owner's problem.

"Brian Malarkey told Walt that the problem is not with the workmanship, it is with the obvious code violations allowed by the building inspector. Dick Newell accused G & W of protecting Joe Zappone, to which Walt had no real comment. Dick brought up the fact that Frank Rosa of unit 6A had complained frequently to G & W about the problems with his unit, yet the board was never told of the severity of the problem. Dan Leveillee told Walt that the Board was told by Andy that the problem was 'just a water problem.' Walt did not know the specifics of the case, therefore, he had no comment.

"Dan Leveillee then asked Walt for his opinion, and Walt suggested getting a list of code violations together. Walt will get the names of several engineers. Jim Michaud will get a copy of the codes violated and will have them for the engineer, so he will have the specs. Jim will also get bids from area contractors on repairing the damage to unit 6A. (Dick Newell and Jim will go with contractors to inspect the damaged areas.)"

mony in support of its position that the defendants had engaged in fraudulent concealment, thus tolling the statute of limitations. The plaintiff claimed that Lecko knew of the violations of the building code because he had inspected the plumbing and electrical installations at Mountaindale, which occurred after the framing was completed but before the dry wall had been hung. The plaintiff also claimed that Lecko could see that there was no framing in the attic for fire separation walls. The plaintiff argued that Lecko concealed the building code defects, in part, by failing to complete that portion of the certificates of occupancy calling for identification of the use group pertaining to Mountaindale, i.e., R-2 or R-3. As to Norton, the plaintiff claimed that because Norton was employed by a unit owner to install a staircase in an attic in 1991, Norton should have known of the absence of fire separation walls.

The court determined that there was no genuine issue of material fact that the plaintiff, through its president, Portanova, knew there were problems with the construction of fire walls in the attics in 1989, although he did not know of the specific violation of the building code until years later. The court concluded that "in 1989, the means of knowledge existed and the circumstances were such as to put a plaintiff of ordinary prudence on inquiry. There was knowledge of what could have been readily ascertained by such inquiry, and the plaintiff learned of information that would lead to the discovery of a cause of action through due diligence. Accordingly, under such circumstances, the plaintiff cannot successfully establish fraudulent concealment of a cause of action." With respect to the allegation that the defendants engaged in a continuing course of conduct to conceal the plaintiff's cause of action, the court, citing *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 162, 464 A.2d 18 (1982), determined that it did not have to reach that issue because the plaintiff through Porta-

nova, the president of the plaintiff's board of directors, knew of a problem with the construction of Mountaindale in 1989, and the continuing course of conduct doctrine does not apply at any time after the plaintiff discovers the harm.

"In the context of applying § 52-584 to decide whether a particular action was commenced in a timely fashion, we have stated that 'an injury occurs when a party suffers some form of actionable harm.' *Burns* v. *Hartford Hospital*, 192 Conn. 451, 460, 472 A.2d 1257 (1984); see *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 521, 562 A.2d 1100 (1989); *Lambert* v. *Stovell*, 205 Conn. 1, 6, 529 A.2d 710 (1987); *Catz* v. *Rubenstein*, 201 Conn. 39, 43, 513 A.2d 98 (1986); see *Durrett* v. *Leading Edge Products, Inc.*, 965 F. Sup. 280, 284–85 (D. Conn. 1997) . . . ." *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 26, 727 A.2d 204 (1999). "Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." (Internal quotation marks omitted.) *Nash* v. *Yap*, 247 Conn. 638, 646 n.12, 726 A.2d 92 (1999). "The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof." *Merly* v. *State*, 211 Conn. 199, 206, 558 A.2d 977 (1989). "The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Internal quotation marks omitted.) *Catz* v. *Rubenstein*, supra, 47. "Although an expert opinion may lead to discovery of an 'actionable harm'; *Burns* v. *Hartford Hospital*, [supra, 460]; it does not follow that a plaintiff cannot reasonably discover an injury absent verification by a qualified expert." *Barnes* v. *Schlein*, 192 Conn. 732, 737–38 n.7, 473 A.2d 1221 (1984). With respect to the language of § 52-584, our Supreme Court has stated, "To hold that a claimant has an option to present his claim within

one year from the actual discovery of actionable harm rather than from the time when such harm 'in the exercise of reasonable care should have been discovered' would render the latter phrase superfluous and wholly ineffective in requiring reasonable diligence on the part of claimants." *Merly* v. *State*, supra, 207, citing § 52-584.

In its brief and at oral argument before this court, the plaintiff claimed that it did not know until November, 1993, whether Mountaindale fell within the R-2 or R-3 use group of the building code and, therefore, whether the condominium was required to be built with fire walls or fire separation walls in the attics of each unit.[13] The question we must determine is whether there is any genuine issue of material fact that Portanova

[13] This claim that the plaintiff did not know the required fire rating until November, 1993, is irrelevant. The August 2, 1989 memorandum of the president of the plaintiff's board of directors clearly indicates that he was aware of the noncompliance of the builder with both the building and fire codes. In support of its motion for summary judgment, the town submitted a copy of a letter to the property manager from counsel representing a party in a dispute over common charges and defects in unit 6A to which the minutes make reference. Also in support of its motion, the town submitted a copy of the field correction notice and letter concerning unit 6A that was issued by a town building official on February 15, 1991.

The letter from counsel that is dated January 13, 1992, states in part: "Attached . . . [is] a copy of . . . a letter from the Building Official of the Town of Thomaston, dated February 15, 1991 re Unit-6A and a Field Correction Notice, dated February 15, 1991 re problems at Mr. Rosa's unit."

The February 15, 1991 letter from the building official to Rosa states in part: "Another violation I encountered was that openings were left in the garage ceiling and party wall where plumbing and electrical penetrated the wall and ceiling. Basement garages must be smoke tight and fire-rated for one hour. This is a life threatening situation and must be corrected immediately.

"Please refer to the BOCA Code book, Section 1207.0, 1207.1 and 1207.3 for violations."

The field correction notice dated February 15, 1991, states in part: "Upon inspection, violations of the BOCA Code book Sec. 1207.0-1207.1-1207.3 were in evidence. The following orders are hereby issued for their correction: fire rating in garage no good. . . . Please call for inspection when corrections have been completed. Acceptance and approval by an inspector of this department is required. All corrections must be made on or before 3-19-91."

knew of construction defects sufficient to put him on notice in August, 1989, that it was likely there were building and fire code violations involved in the construction of the units.

In August, 1989, Portanova wrote to the property manager, asking him to get a legal opinion concerning fire walls, fire walls in the attic and the building code. The plaintiff does not dispute this fact, but claims that when Portanova wrote the memorandum, he was concerned about noise and was acting on misinformation he had received from business acquaintances who told him the walls separating the units were required to be concrete. This position overlooks the unequivocal nature of Portanova's deposition testimony concerning fire walls in the attic.[14] Portanova had lived in his unit for approximately two years, had gone into his attic

---

[14] The following sections of Portanova's deposition testimony are relevant. Defense counsel conducted the inquiry.

"Q: So, you first became aware of the alleged lack of fire walls back in 1989, correct?

* * *

"A: In '89 I had a belief from—I was in the trucking and warehousing business and I can hear my neighbors through my walls, and I requested or asked one of my contractors that was a customer of mine why I can hear my neighbors through my walls, and he told me that there should be a contiguous concrete wall from the—between every two units, which is what prompted that letter.

"Q: But getting back to the—we'll come back to the fire separation walls question. Getting back to the fire walls in the attic, when did you first become aware that there might not be proper fire walls in the attic at Mountaindale?

"A: I would say that 1989 was my first—was when I questioned whether there were fire walls in the attics or proper fire walls.

"Q: And with regard to the fire separation walls between the units, was it also in 1989 that you first became aware that there might not be proper fire separation walls between the units at Mountaindale?

"A: I didn't know about the fire separation walls. My concern in '89 was a concrete wall that I was told was the code between every two adjoining units, which I knew there wasn't, and that was where I was going with that letter—is that there should be concrete—in my opinion or in my—what I was told was that there should be concrete between the units.

"Q: So, back in 1989 you became aware that there might be a problem with the fire walls in the attic?

and had seen that only his unit had a fire wall. As a result of his own observations and concerns, he questioned the construction of fire walls in the attic. The plaintiff presented no evidence to contradict when Portanova became aware of these facts, which occurred prior to August, 1989.

Section 52-584 provides in relevant part, "No action to recover damages for injury to . . . real or personal

* * *

"A: Yes, I would say yes, I believe there was –

"Q: And in 1989, you first became aware that there might be problems with the walls between the units at Mountaindale?

"A: My concern was in the noise I was getting through the walls. That was my concern with the walls.

"Q: Your concern [with] the walls between the units was limited to noise?

"A: That's what started my inquiry, and a customer told me there was supposed to be a fire wall made of concrete.

* * *

"Q: With regard to this memorandum, can you tell me the circumstances that gave rise to you authoring the last paragraph of that memorandum?

* * *

"A: Okay, yes, I had—while I was living in my unit, the bedrooms on those units are directly in line side by side so the B unit and the D unit bedrooms, master bedrooms, were directly against mine and I could hear conversations, I can hear intimacies in the bedroom at night, and if I can hear them of course they can hear me and that was my concern—is that if I can hear them barely talking, that they could hear me and I mentioned that to some of my customers who would know more than I do about the building of those units, and they said that oh, well, you shouldn't be able to hear through there, there should be a concrete wall between yours because my belief was . . . *Of course, at this point I had been in the attic probably almost two years and there was a Sheetrock wall, as I said, in my attic, but the cable wires run across the floor of my attic and run through holes in the Sheetrock walls, and by looking through those holes, I could see the other end of the building so my unit in my building was the only unit that had walls in the attic.*

"Q: When did you determine that your building was the only building that had walls in the attic?

"A: I mean my unit, not my building. Exactly when I don't—somewhere when I was up in the attic. I inspected my roof, and when I realized I had all that nice space up there that was unused, I opened up that doorway and started packing excess belongings up in the attic.

"Q: Would that have been before you drafted that memorandum?

"A: Yes. That would have been in that same time period. *That's what*

property, caused by . . . reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ." Section 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." The allegation of wrongdoing against these defendants is the reckless issuance of certificates of occupancy warranting that the Mountaindale units were in substantial compliance with the relevant building codes, and that the construction of the units was in violation of the building and fire codes. The last certificates of occupancy were issued at the end of 1987. Portanova discovered the missing fire walls in the attic in the summer of 1989. As a matter of law, as we explain more fully in part III of this opinion, Portanova's concern was sufficient to require Mountaindale to make reasonable efforts to discover whether there were building code violations and bring an action within the time frames of the statutes of limitations. See *Catz* v. *Rubenstein*, supra, 201 Conn. 39; *Burns* v. *Hartford Hospital*, supra, 192 Conn. 460. The plaintiff should have brought an action when it knew of any building code violations affecting the roof or the fire walls. It knew of the fire code violations in 1989 and could have moved to amend a timely complaint when any building code violations involving the roof were discovered. This later, additional violation, known at least on January 20, 1992, flows from the same nucleus of facts known to the plaintiff in 1989. The plaintiff was aware of actionable harm in 1989 for the purposes of the statute of limitation. See *Merly* v. *State*, supra, 211 Conn. 206.

caused me to ask about the attic walls because I was the only one that I noticed that had them." (Emphasis added.)

The plaintiff did not commence its action until January, 1995, which is beyond the time permitted by either §§ 52-577 or 52-584. The court, therefore, properly determined that fraudulent concealment and a continuing course of conduct did not toll the statute of limitation.

## III

The plaintiff's third claim is that the court improperly engaged in fact-finding when it found that the plaintiff was on constructive notice of building code violations and failed to make reasonable inquiry. We are not persuaded.

## A

The first subissue is whether the court improperly engaged in fact-finding in rendering summary judgment. The substance of the plaintiff's claims is that the court confused the distinction between fire walls, which are constructed of concrete, and fire separation walls, and that the court did not place Portanova's August 2, 1989 memorandum in its proper context, specifically with regard to the advice given to Portanova concerning noise. The plaintiff also claims that the court overlooked the allegations of the complaint. On the basis of our review of the complaint and Portanova's deposition testimony cited in footnote 14, we conclude that this is not the case.

The plaintiff's fifth revised complaint alleges in relevant part as follows: "¶41. Article 9 of the Building Code states that: 'multiple, single-family dwellings . . . attached by a common wall, said wall shall be a fire separation wall, having a minimum one (1) hour resistance rating. Said wall shall extend from the foundation to the underside of the roof sheathing, and to the inside of the exterior wall sheathing. . . . ¶48. [The named defendant] constructed the Mountaindale buildings . . . in violation of the Building Code, Fire Code . . .

in one or more of the following ways . . . b. in that these separation walls stop at the bottom of the second floor ceiling in violation of the requirement that there be a continuous fire separation wall; c. in that none of the units have the mandatory continuous fire separation walls between the units from the foundation to the roof as required to provide the required fire resistance of at least one (1) hour between adjacent condominium units . . . e. in that all of the units have either conduits, pipes or electrical wires which are not properly sealed and thus improperly and impermissibly penetrate the existing walls between the individual units allowing the spread of fire and smoke, thereby also violating the requirement that there be a continuous unbroken fire separation wall . . . ¶51. These violations were unknown to any of the unit owners or to the Association because a reasonably diligent inspection of the units by the Plaintiff (which has no expertise in Building or in Fire Codes) could not and did not reveal these defects nor were said defects and deficiencies . . . readily recognizable by the unit owners who lacked special knowledge or training."

The plaintiff presented no evidence to contradict Portanova's testimony that sometime prior to August, 1989, he was in the attic of his unit and saw cable wires on the floor that went through the wall. He looked through the holes in the wall and observed that only his unit had walls in the attic. Through the holes, he could see the end of his building. Portanova testified that he knew of the absence of fire walls in the attic during the summer of 1989. According to the allegations of the plaintiff's complaint, one of the construction defects concerned the presence of fire walls in the attics. There is no genuine issue of material fact that Portanova knew almost six years prior to the commencement of the plaintiff's cause of action that there were no fire walls in the attics of all the units. The court in granting summary

judgment, therefore, did not improperly engage in fact-finding.

## B

The second subissue is the plaintiff's claim that the court improperly ignored facts concerning whether the plaintiff made reasonable inquiry. To raise this issue is to accuse the court of failing to find facts, which a court may not do when considering a motion for summary judgment. In effect, the plaintiff claims that the court improperly failed to determine whether the plaintiff made reasonable inquiry when Portanova told the property manager to get an opinion from a lawyer and in regard to the circumstances that ensued. The court was required to do no more than determine whether there was a genuine issue of material fact that the plaintiff knew that it had been injured more than two or three years from the time the action was commenced. To determine whether the plaintiff's efforts to discover its injury were reasonable would have been a factual inquiry. The court, therefore, properly did not consider the question, in addition to the fact that that issue is not relevant to when the plaintiff discovered actionable harm.

## IV

The plaintiff's fourth claim is that the court improperly (1) ignored factual predicates that, as a matter of law, give rise to genuine issues of material fact concerning the fraudulent concealment by the defendants and (2) barred the plaintiff from conducting discovery as to Lecko. We do not agree.

## A

The plaintiff claims that the court ignored factual predicates that, as a matter of law, raise genuine issues of material fact concerning Lecko's and Norton's fraudulent concealment of the plaintiff's cause of action. This

question is not relevant to the issue of when the plaintiff discovered actionable harm. As we concluded in part II of this opinion, the court properly determined that Portanova discovered the absence of fire walls in the attics of his building no later than August, 1989. Portanova's discovery of actionable harm within the parameters of §§ 52-577 and 52-584 will not extend the time to commence a cause of action.

The fact of the matter is that the court determined that the plaintiff had not commenced an action within either two or three years from the date Portanova discovered that only his unit had fire walls in the attic of his building. The plaintiff, on appeal, asks this court to take a next step and determine whether the defendants' actions prevented the plaintiff from exercising reasonable care to discover the cause of the harm or a theory of recovery. There is absolutely no question that according to his deposition testimony, Portanova knew there were no fire walls in the attics and that he considered that to be a problem. He instructed the property manager to talk to a lawyer about the problem and to get a legal opinion. For whatever reason, Portanova and the property manager did not do that and now seek to lay responsibility for their decision at the feet of the defendants. This our law does not permit. As set forth in part II of this opinion, the statute of limitations is not tolled when the plaintiff discovers some form of actionable harm; see *Burns* v. *Hartford Hospital*, supra, 192 Conn. 460; we must look to the plaintiff's knowledge of facts rather than to its discovery of a legal theory. See *Catz* v. *Rubenstein*, supra, 201 Conn. 47.

B

The plaintiff's second subissue is that the court improperly prohibited it from conducting discovery as to Lecko. The plaintiff has not provided us with the interrogatories and requests for production at issue,

a transcript of the argument before the court or an articulation of the court's ruling. "It is the appellant's burden to provide an adequate record for review. Practice Book § [60-5] . . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Citations omitted; internal quotation marks omitted.) *Krondes* v. *Norwalk Savings Society*, 53 Conn. App. 102, 116, 728 A.2d 1103 (1999). Here, the plaintiff did not move for an articulation of the court's ruling regarding the subject discovery. We therefore decline to review this claim.

V

The plaintiff's final claim is that the court improperly concluded that the continuing course of conduct doctrine did not toll the statute of limitations. We do not agree.

The plaintiff argued that the building code required Lecko and Norton to tell it that Mountaindale was not constructed in compliance with the building code. In granting the defendants' motions for summary judgment, the court, citing *Beckenstein* v. *Potter & Carrier, Inc.*, supra, 191 Conn. 162, concluded that there was no factual dispute that Portanova discovered the absence of fire walls in the attics in or before August, 1989, and that the continuing course of conduct doctrine does not apply after the plaintiff discovers the harm.

In *Beckenstein*, the plaintiffs contracted for the construction of a building. Shortly after it was constructed, the roof began to leak, a fact of which the plaintiffs were aware. Id., 154. A number of attempts were made to repair the roof, and an action was not commenced until the statute of limitations had expired. Id., 160. The

general superintendent of the project "also testified that when he went up on the roof in the winter of early 1969, he observed blisters, cracks and canting of the roof. There was not a failure to warn the plaintiffs because they admit that they were already aware of the problem. In their brief, the plaintiffs argue that they were not told the 'main problem' of the roof's failure until 1974. . . . The problem with this argument is that the statute refers to the 'date when the injury was first sustained,' not the date when the cause of the injury was first determined." (Citation omitted.) Id., 162.

In this case, Portanova discovered the absence of fire walls in the attic in 1989, which constitutes actionable harm. The fact that the plaintiff did not discover other related harms, such as defective roofs or the cause of the injury until some years later, namely the precise violations of the fire and building codes, is not sufficient to toll the statute of limitations. The court properly applied the law.

The judgment is affirmed.

In this opinion the other judges concurred.