[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
All defendants have moved for summary judgment in this action. The court will address each motion in this decision.
MOTION OF NICHOLAS CHIRICO AND THE TOWN OF BERLIN
By Motion dated November 1, 2001, Defendants Nicholas Chirico and the Town of Berlin (the "Berlin Defendants"), have moved for summary judgment on all counts of the Amended Substitute Complaint directed against them. They argue that they are shielded from liability for their alleged wrongful acts by the doctrine of governmental immunity, codified in Connecticut General Statutes § 52-557n and that the plaintiffs' claims for negligence (Count Twelve), reckless disregard (Count Fourteen), negligent nuisance (Count Fifteen), and nuisance (Count Sixteen) are time-barred as they were filed more then two years after their accrual, in violation of Connecticut General Statutes § 52-584. Chirico and the Town further argue that the plaintiffs' claim for indemnification under Connecticut General Statutes § 7-465 (Count Thirteen) is time-barred because the plaintiffs failed to provide notice of their intent to bring their claim against Berlin within six months of the accrual of their cause of action, as is required under the statute. Finally, they argue the the plaintiffs' claim of fraud (Count Seventeen) cannot survive as there is no genuine issue of material fact that the Berlin Defendants did not make any statements, that induced the plaintiffs to purchase the Residences.
Plaintiffs' Claims
In the First Count, the plaintiffs allege that, "on or about February 11, 1995, the plaintiffs entered into a contract with [the Builders]," for the sale and purchase of a certain parcel of land owned by [the Builders] known as 74 Lower Lane, Berlin, Connecticut. The plaintiffs also allege that they entered into a contract with the builders to construct a dwelling on the land. The plaintiffs further allege that the CT Page 3999 Builders failed to construct the dwelling in accordance with the contract plans, and with respect to compliance with applicable building codes. The plaintiffs charge that such defects were "concealed from the plaintiffs and could not reasonably have been discovered by them."
In the Twelfth Count, the plaintiffs incorporate Paragraphs 1-11 of the First Count, and further allege that, "[w]hile the defendant Chirico was acting in his capacity as Berlin Building Official, he made one or more inspections of the premises pursuant to the defendant Berlin's obligation to inspect property to ensure that construction complied with the State Building Code and the Zoning Regulation." They further allege that, "[w]hen these inspections were performed the premises contained violations of the State Building Code and the Zoning Ordinance, as aforesaid, which the plaintiffs did not discover until March 17, 1998." The plaintiffs charge that, "[t]he flaws in the construction of the dwelling were so basic and fundamental that the defendant Chirico should have known that the premises met the requirements of neither the State building Code nor the Zoning Ordinance." The plaintiffs also charge that, "[d]espite such knowledge and notice, the defendants Chirico and Berlin issued two certificates of occupancy for the premises on July 21, 1995 to allow the [Builders] to complete the sale of the premises to the plaintiffs, which sale resulted in immediate injury and damage to the plaintiffs." They label this conduct negligent, as ". . . Chirico . . . knew or should have known that that the plaintiffs would reasonably rely on statements made in said certificates of occupancy that such dwelling "conforms substantially to the requirements of the Connecticut State Building Code and the Zoning Regulations of the Town of Berlin' in deciding to pay for the premises and take possession of their homes."
In the Thirteenth Count, the plaintiffs seek, under Connecticut General Statutes § 7.465, indemnification from Berlin for the alleged negligent acts of Mr. Chirico.
In the Fourteenth Count, the plaintiffs allege that the Berlin defendants are liable for the "reckless disregard for health and safety," based on the allegedly negligent issuance of the Certificates and Mr. Chirico's "[failure] to take remedial action against the [Builders] because of defendant's status of generators of revenue for the defendant Berlin even though it was apparent to the defendant Chirico that his failure to act would likely subject the plaintiffs, their families, and all persons who enter or use the premises to imminent harm."
In the Fifteenth and Sixteenth Counts, the plaintiffs allege that the Berlin defendants are liable for a "nuisance" and a "negligent nuisance." CT Page 4000
In the Seventeenth Count, the plaintiffs allege that, "[t]he defendants Chirico and Berlin have at all times represented to the plaintiffs that their house was constructed in accordance with the provisions of the State building Code and the Zoning Ordinance." They also claim that they "relied on said fraudulent representations and reckless misrepresentations and were thereby induced to purchase the premises."
The Undisputed Facts
At all times relevant to the plaintiffs' claims, Mr. Chirico was employed and acting in his capacity as the Building Inspector for the Town of Berlin. As part of his duties as Building Inspector, he inspected the plaintiffs' premises during construction and prior to their formal sale. On or about June 21, 1995, pursuant to his position as Building Inspector, Mr. Chirico issued the Certificates after determining that, in his professional judgment, they "conformed substantially" to the Connecticut Building Code and the Zoning Regulations of the Town of Berlin.
Following their purchase of the Residences, the plaintiffs hired the Marvin H. Schaefer Inspection, Service to perform a home inspection of the Residences. The January 8, 1996 Report of Marvin H. Schaefer Inspection Service (the "Schaefer Report") found some poor workmanship in the construction of the premises, but also found that the premises were in generally good condition.
Almost a year later, the plaintiffs hired Progressive Structures, Inc., to conduct a second home inspection. Following the inspection, Progressive Structures, Inc., in its report dated December 12, 1996, opined that the premises generally appeared to "meet Code."
On December 5, 1996, the plaintiffs lodged a complaint, against the Builders and Mr. Chirico, with the office of the State Building Inspector. In the complaint, the plaintiffs made specific reference to Mr. Chirico's issuance of the Certificates, indicating that they believed such issuance was improper. In May of 1997, Pamela Tynik wrote a letter to the Builders, demanding recompense for "Code Violations." On June 3, 1998, Attorney Jason Pearl, on behalf of the plaintiffs, notified the Town of Berlin that they intended to bring an action against it pursuant to Connecticut General Statutes § 7-465 (1997). The plaintiffs first brought suit against the Berlin defendants on July 6, 1998. The plaintiffs have lived in the premises from 1995 until the present time.
Discussion of the Law and Ruling
Practice Book § 17-49 (formerly § 384) provides that summary CT Page 4001 judgment shall be rendered forth with if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving pat is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v. Middlesex Ins. Co.,219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434,429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 17-45, 17-46; Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson,176 Conn. 304, 309, 407 A.2d 971 (1978); Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); NewMilford Savings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stam, 224 Conn. 524, 530, cert denied,114 S.Ct. 176, 126 L.Ed.2d 136 (1993); Connell v. Colwell, 214 Conn. 242,246, 571 A.2d 116 (1991). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989)
Under the doctrine of governmental immunity "[a] municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." Gordon v. Bridgeport Housing Auth., 208 Conn. 161, 167-68,544 A.2d 1185 (1988). The doctrine, which has been codified in Connecticut General Statutes § 52-557n, shields the Berlin defendants from liability arising from the performance of discretionary duties. Connecticut General Statutes § 52-557n (b) provides, in relevant part:
 [n]otwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be CT Page 4002 liable for damages to person or property resulting from: . . . (7) the issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension, or revocation or such failure constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property . . . to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances.
Conn. Gen. Stat. § 52-557n.
In analyzing whether a municipal employee may be held liable for acts or omissions performed within the scope of his employment, a court must first determine whether there is a public or private duty alleged by the plaintiff Gordon v. Bridgeport Housing Authority, supra at 170, citingShore v. Stonington, 187 Conn. 147, 153, 444 A.2d 1379 (1982). If a "public duty does exist, an official can be liable only if the act complained of is a ministerial act or [if] one of the narrow exceptions to discretionary acts applies." Id.; See also Evon v. Andrews,211 Conn. 501, 505, 559 A.2d 1131 (1989). A majority of jurisdictions follow the rule that since the "general purpose of building codes, building permits and building inspections is to protect the public, a building inspector is held to act exclusively for the benefit of the public." McQuillin, Municipal Corporations, (3rd ed. 1993) 53.88.
 [S]ervices such as inspections mandated by municipal building or fire codes or other inspection laws are considered as services provided to the public in general and are not services rendered to the particular individual. Such laws, it is said, are not to protect the personal or property interest of an individual, but on the contrary are designed to secure to the municipality as a whole the benefits of a well-ordered municipal government, or are for the benefit of the common good.
CT Page 4003 McQuillin, Municipal Corporations (3rd ed. 1993), 53.04.25.
There is no dispute that Mr. Chirico was acting as the Building Inspector for the Town of Berlin at all times relevant to the action. Therefore, the Berlin defendants' duty was public rather than private. If Mr. Chirico's inspections and issuance of the Certificates were "discretionary" in nature, rather than "ministerial", the Berlin defendants are shielded from liability under the doctrine of governmental immunity.
Ministerial acts are those performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action.Gauvin v. City of New Haven, 187 Conn. 180, 184, 445 A.2d 1 (1982);Wright v. Brown, 167 Conn. 464, 471, 356 A.2d 176 (1975). Both the act of conducting the inspections of the premises and the subsequent issuance of the Certificates were inherently discretionary acts. Building code enforcement is analogous to the enforcement of health, housing and fire codes, which are discretionary as a matter of law. Evon v. Andrews,supra, at 507.
In Evon v. Andrews, the court summarized the plaintiffs' claims: "[t]he gravamen [of the challenged claim] is that the site of the fire contained numerous conditions that violated state regulations and state and local building codes and that the defendants were negligent in either failing properly to inspect the premises or to undertake remedial action to correct the deficiencies." 211 Conn. at 505. The court determined that the act of inspecting a building was inherently discretionary, ". . . what constitutes a reasonable, proper or adequate inspection involves the exercise of judgment. Furthermore, no matter how objective the standard, an inspector's decision as to whether a building falls below a standard . . . involves the exercise of his or her judgment." Id., at 506.
While a political subdivision and its employees are generally immune from liability for discretionary acts, there are three narrow exceptions to this rule: (1) where surrounding circumstances make it apparent to the municipal employee that his or her failure to act would be likely to subject an identifiable person to imminent harm; (2) where a statute specifically provides for a claim against a municipality or town official for failure to enforce certain statutes; and (3) where the acts involve malice, wantonness or intent to injure. Evon v. Andrews, supra, at 505. There is no genuine issue of material fact that the actions attributed to the Berlin defendants do not fall within any of the narrow exceptions to immunity.
The discretionary act of a governmental employee may give rise to liability where the surrounding circumstances make it apparent to the CT Page 4004 municipal employee that his or her failure to act would be likely to subject an identifiable person to imminent harm. Id. The "`discrete person/imminent harm' exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state." Id. at 507.
In Evon, which involved an action brought against municipal officials for the alleged negligent inspection of an apartment building which later caught fire, killing several residents, the court stated:
 . . . the risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future . . . The plaintiffs' decedents were not subject to imminent harm. The fire could have occurred at any future time, or not at all . . . The adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society.
211 Conn. at 508 (internal citations omitted).
The plaintiffs have not presented any evidence that the allegedly wrongful issuance of the Certificates subjected them to any harm, much less that the Berlin defendants knew that their acts would do so. The Certificates were issued on July 21, 1995. The plaintiffs do not dispute that they have lived in the premises from July 29, 1995 to the present date. Mr. Chirico's inspections of the premises revealed construction that was in substantial conformance with the applicable building Codes. The plaintiffs' own investigation into the condition of their home confirms that the premises were structurally sound, and safe. Progressive Structures Inc., in a December 12, 1996 Report made pursuant to an inspection commissioned by the plaintiffs, determined that, "[t]he house is structurally adequate, though there are several items which need to be addressed. However, while it generally appears to `meet Code,' it does so minimally . . ." Progressive Structures Report, p. 6. Based on the foregoing, it appears that there was no risk of harm to the plaintiffs, imminent or otherwise. Therefore, the first of the three narrow exceptions to governmental immunity does not apply.
Liability may also arise from the discretionary act of a governmental employee where a statute specifically provides for a claim against a municipality or town official for failure to enforce certain statutes.Evon v. Andrews, supra, at 505. Connecticut General Statutes § 29-261
(b) does not provide for a private right of action against building inspectors and the plaintiffs have not cited any other statutes providing CT Page 4005 for a private cause of action against building officials or health directors. Therefore, this exception is inapplicable.
Connecticut General Statutes § 52-557n (b)(7) and (8) codifies the "recklessness" exception to the rule of qualified immunity of city officials acting in governmental functions. Recklessness requires conduct that greatly deviates from mere negligence, it is "more than negligence, more than gross negligence." Dubay v. Irish, 207 Conn. 518, 532,542 A.2d 711 (1988). A finding of recklessness is equivalent to a finding of wanton and willful conduct, conduct which requires not only awareness of the risk but also an actual intent to engage in conduct, which the actor expects, will cause harm. Id. at 533. In other words, there must be more than a failure to exercise a reasonable degree of watchfulness, more than conduct that is "thoughtless, heedless, inadvertent or momentarily careless." Id. at 532.
As set forth above, the condition of the premises was not unsafe, and therefore, any conduct by the defendant Chirico in issuing a certificate of occupancy or making an inspection could not have evidenced his "disregard for health or safety"of the plaintiffs within the meaning of § 52-557n (b)(8). Therefore, that exception to governmental immunity does not apply.
As none of the three narrow exceptions to governmental immunity apply, the court hereby grants summary judgment in favor of the Berlin defendants as to counts Twelve, Fourteen, Fifteen, Sixteen, and Seventeen of the Amended Substitute Complaint.
The Berlin defendants have asserted failure to comply with Connecticut General Statutes § 52-584, the statute of limitations, as an alternative ground for summary judgment as to Counts Twelve, Fourteen, Fifteen, and Sixteen. Section 52-584, "imposes two specific time requirements on prospective plaintiffs. The first requires a plaintiff to bring an action within two years from the date when the injury is first sustained or discovered in the exercise of reasonable care should have been discovered . . . The second provides that in no event shall a plaintiff bring an action more than three years from the date of the act or omission complained of . . ." Nardi v. AA Electronic SecurityEngineering, Inc., 32 Conn. App. 205, 210, 628 A.2d 991 (1993) (citations omitted; internal quotations omitted).
 "In the context of applying § 52-584 to decide whether a particular action was commenced in a timely fashion, we have stated that `an injury occurs when a party suffers some form of actionable harm.' Burns v. Hartford Hospital, 192 Conn. 451, 460, 472 A.2d 1257
CT Page 4006 (1984); see Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509, 521, 562 A.2d 1100 (1989); Lambert v. Stovell, 205 Conn. 1, 6, 529 A.2d 710 (1987); Catz v. Rubenstein, 201 Conn. 39, 43, 513 A.2d 98 (1986); see Durrett v. Leading Edge Products, Inc., 965 F. Sup. 280, 284-85 (D.Conn. 1997) . . ." Rivera v. Double A Transportation, Inc., 248 Conn. 21, 26, 727 A.2d 204
(1999). "Actionable harm occurs when the plaintiff discovers or should discover, through the exercise of reasonable care, that he or she has been injured and that the defendant's conduct caused such injury." (Internal quotation marks omitted.) Nash v. Yap, 247 Conn. 638, 646 n. 12, 726 A.2d 92 (1999). "The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof" Merly v. State, 211 Conn. 199, 206, 558 A.2d 977 (1989). "The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Internal quotation marks omitted.) Catz v. Rubenstein, supra,
47. "Although an expert opinion may lead to discovery of an `actionable harm'; Burns v. Hartford Hospital, [supra, 460]; it does not follow that a plaintiff cannot reasonably discover an injury absent verification by a qualified expert." Barnes v. Schlein, 192 Conn. 732, 737-38 n. 7, 473 A.2d 1221
(1984). With respect to the language of § 52-584, our Supreme Court has stated, "To hold that a claimant has an option to present his claim within one year from the actual discovery of actionable harm rather than from the time when such harm `in the exercise of reasonable care should have been discovered' would render the latter phrase superfluous and wholly ineffective in requiring reasonable diligence on the part of claimants." Merly v. State, supra, 207, citing § 52-584.
Mountaindale Condominium Assn. v. Zappone, 59 Conn. App. 311, 323-24,757 A.2d 608 (2000). Emphasis added.
The plaintiffs first brought an action against the Berlin defendants on July 6, 1998. Therefore, if the plaintiffs discovered, or should have discovered through the exercise of reasonable care, prior to July 6, 1996 that the alleged conduct of the Berlin defendants caused them harm, their claims are time-bred as brought more than two years after such discovery. The Berlin defendants have presented abundant undisputed CT Page 4007 evidence that the plaintiffs knew prior to July 6, 1996 that the Berlin defendants may have caused them injury.
The Schaefer Report, issued on January 13, 1996, was based on an in-person inspection of the premises made while the "buyers" (the plaintiffs) were present. The Schaefer Report pointed out instances of"unworkmanlike" construction, and made specific references to the local building code. "The back basement supporting walls are constructed of 2x6s, 24 inches on center which may be less than adequate by state or some municipal codes." See Schaefer Report at p. 5. "In many areas a continuous fire wall is required between dwelling units from the basement through the attic. This condition does not east between these two units. There is open space between the units in the basement, and the attic. I recommend consulting local building codes to determine if this is required during the construction of this building." Id., at p. 12.
The references to the "code" contained in the Schaefer Report, as well as the specific directive to consult the "code", indicate that the plaintiffs knew, or should have known through reasonable investigation, of specific "code" violations on January 13, 1996. This knowledge should have alerted the plaintiffs to a possible claim against the Berlin defendants. Such knowledge would place the plaintiffs' initial Complaint outside of the two-year statute of limitations mandated by § 52-584.
The plaintiffs have admitted that they were in possession of the Schafer Report in January of 1996. They have also attached to their Memorandum in Opposition to Summary Judgment plaintiff, Pamela Tynik's, affidavit in which she identifies her letter dated February 12, 1996 detailing the plaintiffs' dissatisfaction with multiple aspects of their home's construction. Exhibit 3. The letter details problems, among others, with the roof, chimney, main pocket beam, fire walls, siding, water damage, instability of the front steps, and settlement cracks in the basement floor. Thus by the plaintiffs' own admission, they were aware of the alleged construction problems at the premises prior to July 6, 1996.
The plaintiffs incorrectly claim that the relevant date for purpose of § 52-584, was the date on which they leaned about specific building code violations. Such an argument was rejected by the Court inMountaindale Condominium Assn. v. Zappone, supra. In that case the plaintiff argued that it did not "know" about the harm caused by a builder for purposes of § 52-584 until it learned the specific building code violations allegedly committed. The Court disagreed and held that when the plaintiff's president became aware of construction defects he "should have known" about the harm for purposes of § 52-584 because he should have made reasonable efforts to discover whether there were building code CT Page 4008 violations and bring an action within the time frames of the statutes of limitations. 59 Conn. App. at 327.
The plaintiffs do not deny that they had knowledge of the construction defects referred to in the January 1996 Schafer Report and in their February 1996 letter. Thus the harm claimed in Counts Twelve, Fourteen, Fifteen, and Sixteen "in the exercise of reasonable care should have been discovered" before July 6, 1996. Therefore, § 52-584 is an alternate basis for granting summary judgment in favor of the Berlin defendants on those Counts.
The Berlin defendants also argue that the plaintiffs' claims alleged in Count Thirteen against Berlin pursuant to Connecticut General Statutes § 7-465 are also barred by the applicable limitations period. Connecticut General Statutes § 7-465 (a) provides that:
 Any town, city or borough . . . shall pay on behalf of any employee . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for . . . physical damages to person or property . . . if the employee was acting within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any willful or wanton act of such employee . . . No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefore arose nor unless written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued.
Connecticut General Statutes § 7-465 is a prerequisite to maintaining an action against a municipality for the acts or omissions of municipal employees. Velez v. City of New London, 903 F. Sup. 286, 289
(D. Conn. 1995). As stated above, the plaintiffs' claim for indemnification is barred because they failed to bring their action against Berlin within two years of the action's accrual as is required under § 7-465.
In addition to the two-year limitation, § 7-465 also contains a notice provision requiring a plaintiff to provide notice of the intention CT Page 4009 to commence an action with the clerk of the municipality within six months after the cause of action has accrued. Connecticut General Statutes § 7-465 provides that, "notice must be given . . . as a condition precedent to any action" for indemnification under this section. MacLeod v. Town of Berlin, 25 Conn. Sup. 70, 72 (1963). It is undisputed that the plaintiffs first notified Berlin of their intent to bring an action on June 3, 1998. Therefore, in order to comply with the six-month requirement, their claim could have accrued no earlier than December 3, 1997. The undisputed evidence demonstrates that the plaintiffs became aware of possible claims against the Berlin defendants prior to that date.
On December 5, 1996, the plaintiffs lodged a complaint, against the Builders and Mr. Chirico, with Mr. Mark Leone of the office of the State Building Inspector. In the complaint, the plaintiffs state: "[t]he following is a list of problems which were found by a home inspection service after our CO was issued and we had purchased the home." This indicates that the plaintiffs were aware of the alleged wrongdoing by the Berlin defendants nearly 18 months prior to the time they sent their § 7-465 notice. The notice was clearly not timely, thereby providing an additional alternate ground for granting summary judgment in favor of the Town of Berlin.
To reiterate, for the reasons set forth above, summary judgment may enter in favor of Nicholas Chirico and the Town of Berlin on all counts.Motions for Summary Judgment by Jeffrey Russo, Gary Sirois, Marilyn Russoand Mary Sirois
The defendants Jeffrey Russo, Gary Sirois, Marilyn Russo and Mary Sirois have moved for summary judgment on the grounds that the original contract for purchase of the property was between the defendant, Redcoat Home Builders, Inc., and the plaintiffs, and was later signed by Jeffrey Russo and Gary Sirois in their capacity as guarantors. They further argue that their "guaranties" are invalid because they were not supported by separate consideration and because they signed as "guarantors" under duress.
The Motions for Summary Judgment by Marilyn Russo and Mary Sirois are based on the same arguments as those made by Jeffrey Russo, Gary Sirois.
It appears that the contract in question was originally between "Redcoat Home Builders" and the plaintiffs, and that the plaintiffs believed that Redcoat Home Builders was a partnership and not a corporation. The capacity in which Sirois and Russo signed the contract and the circumstances surrounding said signing are issues of facts which are in dispute. Therefore, summary judgment is not appropriate. The CT Page 4010 Motions for Summary Judgment by Jeffrey Russo, Gary Sirois, Marilyn Russo and Mary Sirois are hereby denied.
By the court,
___________________ Aurigemma, J.