[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS #105
On October 5, 1989, Eric C. Perry (Perry) was arrested for a knife-point robbery. The Connecticut Public Defenders Services Commission (PDSC) appointed one of its attorneys, Joseph G. Bruckmann (Bruckmann) (collectively, "defendants"), to represent Perry. Despite Perry's repeated requests to Bruckmann to arrange an in-person identification by the victim, Bruckmann failed to do so for ten and one half months, during which time Perry remained incarcerated pending trial. On July 27, 1990, as the jury for Perry's trial was being selected, the victim viewed Perry and told the prosecutor that he was not the man who had robbed her at knife-point. Perry was immediately released. Perry then filed a Notice of Claim against the state, pursuant to General Statutes § 4-141 etseq., and on January 31, 1991, the Office of the claims commissioner accepted Perry's Notice of Claim. Approximately ten years later the commissioner made a finding of no award, and during the 2001 legislative session recommended to the General Assembly, pursuant to General Statutes § 4-159, that it approve his finding of no award. The General Assembly rejected the commissioner's recommendation, and instead enacted Substitute House Joint Resolution No. 58, LCO No. 3021, providing:
 "That the recommendation of the Claims Commissioner, file number 12004 of said commissioner, that no award be granted to Eric Perry on his claim against the state in excess of seven thousand five hundred dollars and that permission to sue be denied, is rejected and Eric Perry is authorized to institute and prosecute to final judgment an action against the state to recover damages for his wrongful incarceration, pending trial."
On September 24, 2001, Perry commenced this action against the defendants. Perry alleges that he brings this action by permission of the General Assembly, pursuant to the above resolution. In count one, directed at the state and Bruckmann, Perry alleges that Bruckman negligently failed to arrange an in-person identification. In count two, also directed at the state and Bruckmann, he alleges that the claims commissioner's nine and a half year delay in considering his claim violated his civil rights and his state and federal due process and equal CT Page 10085 protection guarantees.
The defendants move to dismiss the action on the ground that the General Assembly's resolution does not confer jurisdiction upon the court because it is unconstitutional, and it violates the express provisions of the claims commissioner statutes. With regard to the second count, they argue, notwithstanding their claim of constitutional deficiency of the resolution, that it impermissibly exceeds the scope of the resolution. Perry responds by arguing that the court has jurisdiction because the resolution is constitutional, does not violate any of the relevant statutes, and that the complaint does not exceed the scope of the resolution.
 I Standard of Review
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v.Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "A motion to dismiss tests. whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624, 461 A.2d 991 (1983). See also Practice Book § 10-31. "When the constitutionality of a statute implicates the jurisdiction of the court . . . a motion to dismiss may properly serve as a vehicle for presenting such an issue." Chotkowskiv. State, 213 Conn. 13, 19 n. 8, 566 A.2d 419 (1989). Under the doctrine of sovereign immunity, the state is immune from suit unless through appropriate legislation it consents to be sued. See, e.g., Federal DepositIns. Corp. v. Peabody, N.E., Inc., 239 Conn. 93, 101, 680 A.2d 1321
(1996); Bresnan v. Frankel, 224 Conn. 23, 25, 615 A.2d 1040 (1992); Whitev. Burns, 213 Conn. 307, 312, 567 A.2d 1195 (1990). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v. Peabody, N.E., Inc., supra, 239 Conn. 99; Novicki v. New Haven, 47 Conn. App. 734, 739,709 A.2d 2 (1998).
 II
The defendants first claim that the joint resolution violates article first, § 1, of the Connecticut constitution, because it constitutes an exclusive public emolument. They argue that it impermissibly benefits a single individual and that nothing indicates that it would serve a public purpose to allow Perry to sue the state. They further argue that CT Page 10086 this case is unlike Chotkowski v. State, 240 Conn. 246, 690 A.2d 368
(1997) (Chotkowski III), where the General Assembly made an express legislative finding that the authorization to sue the state would serve a public purpose; see id., 254. In the present case, they argue, the General Assembly's resolution fails to facially state or establish such a public purpose, that it is therefore unconstitutional, and that the court therefore lacks jurisdiction to hear this matter.
Perry responds by arguing that to permit him to sue would remedy a clear injustice done to him by the state public defender, that the legislature is attempting to remedy that injustice, and that this serves a public purpose.
The defendants' argument is premised on the assumption that the legislature was required to further a public purpose in making the resolution regarding Perry's right to sue the state, and they citeChotkowski v. State, supra, 240 Conn. 246, in support of that claim. As the defendants themselves point out, however, this case is unlike theChotkowski v. State line of cases. In Chotkowski v. State, the court was dealing with "circumstances . . . where a special act has allowed a person named therein to bring a suit . . . that would otherwise be barred for failure to comply with [the] time limit specified in [§ 4-148
(a)]. . . ." (Internal quotation marks omitted.) Chotkowski v. State,213 Conn. 13, 17-18, 566 A.2d 419 (1989) (Chotkowski II); see also id.,15-16.
In that case, the special act that the legislature passed, "allowing [the] claimant to sue the state despite failure to present his claim to the claims commissioner within the time allowed by § 4-148 (a) constituted the grant of "exclusive public emoluments or privileges' in violation of article first, § 1." Id., 17. The court stated that "[n]o enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gainor advantage to an individual." (Emphasis added; internal quotation marks omitted.) Id.
Because the special act involved in Chotkowski v. State created an advantage to an individual — due to the special act's extension or waiver of the time limitation contained in § 4-148 (a) for the benefit of a single individual — and because it did not state a public purpose, the enactment could not withstand constitutional attack. Id., 18-19. In that factual context, the court stated that such an act — i.e. one that creates a preference or grants an advantage to an individual — can only be constitutionally sufficient if it also serves some public purpose. Id., 17. CT Page 10087
In response to Chotkowski II, "[t]he legislature . . . enacted No. 90-284 of the 1990 Public Acts (P.A. 90-284), now codified at § 4-148
(b). . . ." Chotkowski v. State, supra, 240 Conn. 253.[1]
That section requires the legislature to make an express finding that a special act authorizing a claim against the state after the time limitation of § 4-148 (a) has passed would serve a public purpose. The present case, however, does not implicate the time bar contained in § 4-148 (a), nor does it involve a special act pursuant to § 4-148 (b) to overcome that time bar.[2] In the present case, the court is not dealing with a situation where, absent the special act, Perry's claim would be barred abinitio by § 4-148 (a) due to untimeliness — Perry's Notice of Claim to the claims commissioner was timely filed — and the special act here did not broaden Perry's individual rights by extending or waiving a time limitation that "must be applied uniformly to all claimants." Chotkowski v. State, supra, 213 Conn. 19. Therefore, the legislature did not create a preference or grant an advantage to Perry. See Merly v. State, 211 Conn. 199, 205, 558 A.2d 977 (1989); see alsoVogel v. State, Superior Court, judicial district of Hartford at Hartford, Docket No. 588391 (June 14, 2001, Rubinow, J.) (General Assembly's resolution "simply would allow [the plaintiff] to bring a suit just as anyone else could bring a suit under similar circumstances [were] it not the state is the defendant").
Instead, the present case involves a special act made pursuant to General Statutes § 4-159. Section 4-159 provides as follows:
"Recommendations for payments in excess of seven thousand five hundred dollars. Action by General Assembly. After hearing, the Claims Commissioner shall make his recommendations to the General Assembly for the payment or rejection of amounts exceeding seven thousand five hundred dollars. Within five days after the convening of each regular session and at such other times as the speaker of the House of Representatives and president pro tempore of the Senate may desire, the Claims Commissioner shall submit such recommendations to the General Assembly, together with a copy of his findings and of the hearing record of each claim so reported. The General Assembly may (1) accept or alter any such recommendation or (2) reject any such recommendation and grant or deny the claimant permission to sue the state. The General Assembly may grant the claimant permission to sue the state under the provisions of this section when the General Assembly deems it just and equitable and believes the claim to present an issue of law or fact under which the state, were it a private person. could be liable." CT Page 10088
(Emphasis added.) This section does not require the legislature to make any finding, express or otherwise, that the special act to be passed would serve a public purpose.[3] Accordingly, the court finds that the special act at issue here did not need to state a public purpose,[4]
that it does not create a preference or grant a personal advantage, and that it does not constitute an exclusive public emolument. Therefore, it does not violate article first, § 1, of the Connecticut constitution.[5]
 III
The defendants also argue that the legislature did not follow the statute's jurisdictional standards which are a prerequisite to permitting a claimant to sue the state. They argue that § 4-159 requires the legislature to make express findings that the suit against the state is just and equitable, and that it believes the claim to present an issue of law or fact under which the state, were it a private person, could be liable.
First, the court is of the opinion that, unlike § 4-158, General Statutes § 4-159 does not set forth a jurisdictional standard. Second, the claims commissioner statutes use express language when they require an express finding of any sort. Significantly, § 4-148 (b); see footnote 1, supra; contains the term "deems' as well as the term "finding' in the same sentence. This constitutes significant proof that the legislature did not intend these terms to have the same meaning. Accordingly, the court finds that use of the terms "deems' and "believes' in § 4-159 does not require the legislature to make express findings under that section. Accord Vogel v. State, supra, Superior Court, Docket No. 588391 ("Acceptance of the defendant's position would compel the court to layer a new obligation upon the clear text of §4-159. . . . [It] would require the General Assembly to use specific designated language when publishing its rejection of a position taken by the Claims Commissioner. Neither the text nor the spirit of the statute requires the legislature to do [this]. . . .")
In Martinez v. Dept. of Public Safety, 258 Conn. 680, 683-84,784 A.2d 347 (2001), the court stated that "[t]he question whether the principles of governmental immunity from suit and liability are waived is a matter for legislative, not judicial, determination. . . . The state's sovereign right not to be sued may be waived by the legislature, provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary implication." (Internal quotation marks omitted) In the present case, the legislature disclosed, by the use of express terms in Substitute House Joint Resolution No. 58, a clear CT Page 10089 intention to waive its right not to be sued.
Furthermore, the fact that the legislature passed this resolution necessarily implies that the legislature must have deemed it just and equitable, and must have believed the claim to present an issue of law or fact under which the state, were it a private person, could be liable. This is sufficient according to § 4-159 and the case law. See Vogelv. State, supra, Superior Court, Docket No. 588391 ("Compliance with the text of § 4-159 necessarily contemplates the legislature's consideration of the factual basis underlying the claim presented to the commissioner" and "[i]n publishing [the special act], the legislature has fully and fairly complied with the textual requirements of § 4-159, thus providing an effective waiver of suit . . .")
 IV
The defendants further argue that there is an inconsistency between §§ 4-148 (c) and 4-159 and request the court to resolve it. Section4-148 (c) provides:
 "No claim cognizable by the Claims Commissioner shall be presented against the state except under the provisions of this chapter. Except as provided in section 4-156, no claim once considered by the Claims Commissioner, by the General Assembly or in a judicial proceeding shall again be presented against the state in any manner."
The defendants argue that, because the claims commissioner held a full evidentiary hearing, considered the matter, and submitted his recommendation to reject Perry's claim to the General Assembly, § 4-148
(c) does not permit Perry's claim to be heard again. Therefore, they argue, the present action is void as a matter of law as it again attempts to bring an action against the state.
The defendants realize that they can reach this conclusion only if they also argue that § 4-159 does not apply here, and that is what they have done. Their argument runs as follows: 1) In the title of § 4-159
it says, "[r]ecommendations for payments in excess of seven thousand five hundred dollars" (Defendants' emphasis); and 2) because the claims commissioner did not recommend any award, and never made a finding that a payment over seven thousand five hundred dollars was warranted, or that such payment should be paid or rejected, § 4-159 does not apply.
There is no merit to this argument. First, the defendants do not dispute that Perry's claim was in excess of seven thousand five hundred dollars. Recommending rejection of such a claim in its entirety, as the CT Page 10090 claims commissioner has done here, causes § 4-159 to be operative;Merly v. State, supra, 211 Conn. 211; and puts the final decision in the hands of the General Assembly. Id.
Second, the defendants' argument is based on the invalid premise that the claims commissioner has sole jurisdiction to finally decide and dispose of claims in excess of seven thousand five hundred dollars on their merits. The only — limited — jurisdiction the claims commissioner has to finally dispose of a claim in excess of that amount, however, is found in § 4-158 (b),[6] which provides that he may make an award on such a claim, but that this terminates the proceedings on the claim only if the claimant accepts the award. If the claimant protests the award, and waives immediate payment, his claim must be submitted to the General Assembly pursuant to § 4-159, for action by that body.[7]
Third, the Connecticut Supreme Court dealt with a similar argument inChotkowski v. State, supra, 240 Conn. 246, where it rejected the state's interpretation that § 4-148 (c) bars a claim against the state if that claim has already been reviewed by the claims commissioner, the legislature, or the judiciary whether or not the reviewing body considered the merits of the claim. Id., 265-66. The court "conclude[d] that § 4-148 (c) does not bar a claim against the state when neither the claims commissioner, the legislature nor the judiciary has everrejected the claim on its merits. . . ." (Emphasis added.) Id., 265-66 n. 23. Because with regard to claims in excess of seven thousand five hundred dollars the General Assembly, pursuant to § 4-159, is the only body that has the power to "reject" such a claim, the mere consideration of such a claim, and recommendation to the legislature, by the claims commissioner does not bar such a claim against the state.[8]
The court therefore finds that there is no inconsistency between §§4-148 (c) and 4-159, and that the defendants' claim is not barred by § 4-148 (c).
 V
The defendants also argue, notwithstanding their claim of constitutional deficiency of the resolution, that the second count impermissibly exceeds the scope of the resolution. The basis for the causes of action[9] in the second count is the nine and a half year delay of the claims commissioner in considering Perry's claim. The defendants argue that by the express language of the joint House resolution, Perry received authorization to bring action against the state only "to recover damages for his wrongful incarceration, pending trial." They argue that the resolution does not authorize Perry to bring CT Page 10091 suit against the state for causing delay in the consideration of his claim, and that, without such authorization, the state has not waived its immunity as to these causes of action. The court is compelled to agree by the express language of the resolution.
"[B]ecause the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." Krozser v. NewHaven, 212 Conn. 415, 420, 562 A.2d 1080 (1989) (upholding trial court's dismissal of action because the federal civil right act does not abrogate the common law doctrine of sovereign immunity and only the claims commissioner can waive sovereign immunity). The second count is based on the claims commissioner's delay in considering Perry's claim, therefore, that count concerns a matter in which the officer represented the state, and is, therefore, a count against him in his official capacity, and a count against the state. "Section 1983 provides a civil claim for damages against any person, who acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. . . . [N]either a State nor its officials acting in their official capacities are persons under § 1983." (Emphasis added; internal quotation marks omitted.) Dickinson v. Goodman, Superior Court, judicial district of Middlesex at Middletown, Docket No. 090101 (May 26, 2000, Gordon, J.)
"We have long recognized the common-law principle that the state cannot be sued without its consent." (Internal quotation marks omitted.) Krozserv. New Haven, supra, 212 Conn. 420. Because the claims commissioner or the General Assembly have not waived sovereign immunity with regard to the causes of action in the second count, and because Perry does not allege that the claims commissioner acted in excess of his statutory authority or pursuant to an unconstitutional statute, the second count is barred by the doctrine of sovereign immunity. See id., 421-22.[10]
 VI
Lastly, the defendants argue that the General Assembly's resolution does not authorize Perry to bring suit against parties other than the state. Therefore, they argue, attorney Bruckmann and the Public Defenders Services Commission should be dismissed from the case as defendants. InKrozser v. New Haven, supra, 212 Conn. 415, the court allowed a suit against the state and the commissioner of correction. Because that case also involved a suit against a state officer concerning a matter in which the officer represented the state, the commissioner of correction was allowed to remain in the suit because courts "[deal] with such suits as if they were solely against the state and have referred to the state as the defendant." (Emphasis added.) Id., 420. The court is therefore not CT Page 10092 required to dismiss the other defendants from this case, and declines to do so.
 CONCLUSION
For the foregoing reasons, the court denies the motion to dismiss as to the first count, grants the motion as to the second count, and denies the dismissal of the defendants Bruckmann and the Public Defenders Services Commission from the action.
 __________________ GALLAGHER, J.